[Civil No. 3826. Filed May 16, 1938.]

[79 Pac. (2d) 501.]

HARRIET D. SCHWARTZ, Appellant, v. WILLIAM A. SCHWARTZ, Appellee.

Messrs. Struckmeyer & Flynn, for Appellant.

Messrs. Hayes & Allee, for Appellee.

ROSS, J.—This is an appeal from that part of the judgment and decree of divorce dividing the community proper. The divorce was given to the appellant upon her cross-complaint, as also the custody of the fifteen year old minor child, Katherine, the only issue of the marriage. This latter part of the decree stands unchallenged.

During the marital relations, from August, 1918, to June, 1936, when such relation was judicially dis-

solved, the community had accumulated considerable property. Most of this property consisted of the savings from the appellee's professional income, who during all the time was a physician and surgeon located and practicing in Phoenix, Arizona. He had only $1,000 to begin with. According to the record, such income, after deducting the family living, was invested in real estate, stocks, bonds, and life insurance and annuities. These were treated as assets of the community. An exception was the home at 721 West Palm Lane, Phoenix, which, together with the furniture, was in 1929 bought and paid for out of the community income and given to the appellant as hers. The purchase price of the home was $10,000. The improvements thereon cost $2,000 and the furnishings $3,000 to $4,000.

In 1930 the relations of the parties became so strained that appellee took rooms at the Arizona Club and ceased living at the home. They have not lived together since that date as husband and wife, but appellee continued his parental attention to his child, Katherine, by visiting her at the home from time to time and by making provision for her present and future care and education. He also gave appellant for the maintenance of the home $500 per month for 1929, 1930, and 1931, and $400 per month for 1932, and thereafter $250 to $300 per month.

On November 24, 1931, and after they had ceased to live together, the appellee indorsed over to the First National Bank of Arizona stocks, bonds, and secured real estate mortgages belonging to the community of the value of $47,208.43 in trust for the use and benefit of appellant and the minor child, Katherine. In the trust estate was $10,000 belonging to appellant, being a sum she had inherited and which had been invested in stocks and other securities, so that the trust estate amounted to $57,208.43 There should be added to this

the value of the home and its furnishings to ascertain the total of the appellant's assets.

The appellee retained of the community property then in his possession and thereafter acquired through his earnings approximately $72,875.10. Included in this are bills receivable in the sum of $16,390.35, estimated as being worth around $9,000; also various insurance and annuity policies with a cash surrender value of $25,952.77. The appellant was originally named as the beneficiary in these policies, or most of them, but they have been changed to designate Katherine, who was at the time of the trial thirteen and one-half years old, as the beneficiary.

Out of the community provision for Katherine had been made as follows: Paid-up annuities taken out in 1931 and 1933 by appellee in the sum of $12,802.77, and a savings certificate maturing in 1938 for $10,000. The appellee also paid to the New York Life Insurance Company the sum of $500, for which said company agreed to send Katherine every year on her birthday a check during the rest of her life, which amounts to approximately $20 a year.

The figures given above may not be accurate but are approximately so.

The court's decree divided the community property by giving to the appellant the trust estate and by giving to appellee that portion of the community in his possession at the time of the trial.

The court further decreed that the appellee should pay $100 per month for the support of Katherine and $200 per month for the support of the appellant until the further order of the court. In addition to this award of $3,600 a year for support, it appears the net income appellant received from the trust estate was approximately $3,000 a year. It amounted to $2,681.99 in 1934 and $3,170.13 in 1935. Under present

rates of interest this income probably has been considerably reduced.

It may also be stated that the carrying charges upon the insurance policies on appellee's life are $2,937.28 annually.

Appellant contends that the court erred in taking into consideration the trust estate in connection with the division of the community property. She insists that the trust property was hers individually; that it had been given to her by appellee and was no more to be considered an asset of the community than the $10,000 she inherited. Her position therefore is that the only community property was what was left after deducting the trust property and that the court should have given her one-half thereof.

■■■■ There can be no question but that the husband and wife as long as they are such are equal owners of the property acquired by their joint efforts during coverture. *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70; *Molina* v. *Ramirez,* 15 Ariz. 249, 138 Pac. 17. It is also well settled that husband and wife may make valid gifts *inter sese* of their interest in the community property to each other so that it becomes separate property of the donee. *Schofield* v. *Gold,* 26 Ariz. 296, 225 Pac. 71, 37 A. L. R. 275; *Lightning Delivery Co.* v. *Matteson,* 45 Ariz. 92, 39 Pac. (2d) 938, 939; *In re Baldwin's Estate,* 50 Ariz. 265, 71 Pac. (2d) 791. It is also settled by the statutes and decisions that the court cannot in its decree of divorce award to either of the spouses the separate property of the other. *Wiltbank* v. *Wiltbank,* 18 Ariz. 435, 162 Pac. 60; *Brown* v. *Brown,* 38 Ariz. 459, 300 Pac. 1007.

The provision of the statute which controls the court in the matter of dividing community property upon a decree of divorce being granted is found in section

2182, Revised Code of 1928, and reads, so far as material, as follows:

"On entering a decree of divorce the court shall order such division of the property of the parties as to the court shall seem just and right, according to the rights of each party and their children, without compelling either party to divest himself or herself of the title to separate property."

■ If it should be granted that the trust estate was the separate property of appellant, the decree does not divest her of her title thereto. Under the decree it continues to be her property. However, there is no prohibition against the court's considering any advances in the way of gifts or donations one of the spouses may have received from the community property in ordering the division. Indeed it would seem what is "just and right, according to the rights of the parties and their children" could not be ascertained or determined without such consideration.

■ The division made by the decree is not widely disproportionate. However, should appellant be given one-half of the portion that was assigned appellee in addition to the advance made by the community to her, she would receive not one-half but two-thirds or three-fourths of the community property. What was "just and right, according to the rights of the parties and their children," the court held did not require such a division of the community assets.

In *McFadden* v. *McFadden,* 22 Ariz. 246, 196 Pac. 452, we were considering paragraph 3862, Revised Statutes of Arizona, 1913, Civil Code, as amended by chapter 65, Laws of 1919, which is practically the same as section 2182, *supra,* and we there said (pages 251, 252):

"In making the division the court favored the wife and mother by decreeing to her considerably more of the property than to the husband and father, but in

doing so he doubtless took into consideration that she had contributed to the original capital the major portion of the funds, and also that she, in all probability, would bear most, if not all, the burden of educating and caring for the minor child.

"The statute does not require the court to favor the party succeeding in the divorce suit, but leaves the whole matter open to inquiry and investigation, and gives the court a freedom controlled only by the court's sense of 'justice and right,' after familiarizing himself with the parties' respective contributions in labor and capital, and their immediate and prospective needs and burdens and deserts."

Again in *Malich* v. *Malich,* 23 Ariz. 423, 204 Pac. 1020, we said (page 430):

"The discretion conferred by this section is very broad, and it is only where it clearly appears that it has been abused that this court is justified in interfering."

In the above cases the rule contended for by appellant, that section 2182, *supra,* requires that the community property be divided upon a decree dissolving the marriage relation in the proportions of one-half to each of the spouses, was not observed, and it is quite clear from the language of such section that it was not intended that such should be the rule.

Under such section the rights of the children, if any, also must be considered in dividing the community property. This provision of the statute refutes the idea that the court is required to divide the common property equally between the spouses. One of them, and we apprehend that is the situation here, is better suited to have the personal charge of the daughter, Katherine, during her young and tender years, and the other is better qualified to provide for her financial needs. These facts doubtless were considered in making the property division. It will be noted that much of the property given to appellee is

held by him for Katherine and in case of his death would go to her.

The trial court, however, treated the trust property as belonging to the community. It is admitted that over $47,000 of it was the accumulation of the community. The declaration of trust is evidence that the beneficial or equitable title of the property therein was in the appellant but that fact does not necessarily make it her separate property, the presumption of law being that all of the property acquired by the community during coverture, irrespective of which holds the legal title, is community property. The only evidence as to why the declaration of trust was made is that of the appellee. He stated in his testimony:

"A. It was to ease Mrs. Schwartz's mind. She had been complaining to me that I might take these bonds and stocks and appropriate them myself and leave town and leave her and her daughter without any funds. I assured them I would not do anything of the sort and to keep her off of my back about it, I thought this might be a way out of it.

"Q. Then was the trust created with your consent? A. For her to have the income from it."

From this evidence it is apparent that the court was right in regarding the trust property as part of the community at the time of entering the decree. If it was a part of the community property, then of course it was, under any view of the law one may take, properly considered in making the division.

■■ In addition to assigning to appellant as hers a large portion of the common property, the decree directs the appellee to pay to her for her support $200 and for Katherine's support $100 per month, and these amounts may, from time to time, if the necessities of appellant or Katherine require it, be increased. Sections 2187, 2188, Rev. Code 1928. The duty of sup-

port and maintenance still rests with appellee. It does not appear to us that the division was disproportionate to the burdens each of the spouses is required, under the decree and the law, to bear, or that the court abused its discretion in making the division.

 Appellant complains of the court's failure to make written findings of fact as provided in section 3819, Id. That section makes it the duty of the court, when an action is tried before it without a jury, upon the request of either party, to make such findings. The jury sat in the case until the close of the evidence and was then discharged without the case being submitted to it. Appellant's request for findings was made after all the evidence was in and the jury discharged. Under the facts and the law, there was no duty on the court to make findings.

 Appellant assigns as error the disallowance of her objections to the form of judgment made and entered in the case. However, this assignment is not argued and we will treat it as abandoned. We will say that our examination of the judgment convinces us it substantially conforms with the court's order for judgment.

The judgment of the lower court is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.