299 P.2d 181

**Reed HATCH, Appellant,**
v.
**Marie Hatch JONES, Appellee.**

No. 6088.

Supreme Court of Arizona.

June 19, 1956.

Supplemental Opinion on Rehearing
July 16, 1956.

6

W. E. Ferguson, Holbrook, for appellant.

Platt & Greer, St. Johns, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Navajo County in favor of plaintiff in an action for the conversion of personal property.

On October 30, 1951, Marion Leslie Hatch and Marie Hatch, husband and wife, entered into a separation agreement by which they attempted to settle their respective community property rights. A portion of the assets were given to Marie Hatch, a portion to Marion Hatch and a third parcel was to be held by both as tenants in common until sold. The portion which the parties held as tenants in common known as the "home place" was placed in the possession of Marie Hatch until a sale could be had, at which time the proceeds of such sale were to be placed in trust for the two minor adopted sons of Marie and Marion Hatch.

The separation agreement did not mention the personal property in the "home place" although the agreement in express terms stated that the parties thereby intended to completely settle their community property rights, which they expressed in the following language:

"In consideration of the premises, and the mutual covenants herein contained, the parties do each declare this a full, final and complete settlement of all their property rights growing out of the marriage relationship of the parties and the wife does hereby covenant that she will not make any claim for alimony in any action having for its purpose the dissolution of the marriage of the parties hereto."

The agreement in a one-line paragraph provided that "Each party shall have his or her personal effects."

On March 22, 1953, Marion Hatch died at Wenden and defendant was appointed executor of his estate April 21, 1953. Appellant testified that he first took possession of the property in question "about the 16th of May, 1953." He thereafter rented the house and furnishings for several months to one H. E. Steele. He was unable to state how many months Steele occupied the premises. He further testified that he removed certain items of personalty from the house at the time it was rented, and moved them back again just prior to the trial of this action.

Mrs. Hatch (Jones) testified that she left the "home place" containing the furniture described in her complaint in April, 1952, (some three months after the decree of divorce was granted) and visited it only periodically thereafter. The last time she visited the "home place" was January 29, 1953, and she did not again enter the premises until the following "October or November". She made a list from memory of all the items of personalty in the house on January 29, 1953, placing a value on each of the items. She testified that all of these items were intended by her husband and herself to be her property at the time of making their separation agreement and that he should have the furniture and other personal property on the real property known as the Knotty Pine Cafe in McNary including the household furnishings which he was to receive under the written property settlement. The evidence discloses also that decedent occupied the "home place" for some time after Mrs. Hatch left it in April of 1952 and that he remained there with their adopted boys until he moved with them to Wenden where he died.

Frank Marquez testified that at one time he purchased some furniture from Marion Hatch at which time Hatch said "Everything you bring from McNary is mine but everything inside the house is not mine; it belongs to Marie and the house belongs to the kids." Later a discussion ensued regarding the purchase of a couch located in the house and Marquez testified that the decedent said "This is not mine, Frank. This belongs to Marie. You can talk to Marie about it." The sister of decedent, Irene Hays, and her husband, Wayne Hays, testified that decedent told them at their home after January, 1952, after the divorce had been granted, that the home and the furnishings belonged to the boys.

The first four assignments of error allege in substance that the court erred in entering judgment in favor of plaintiff because the character of the property was other than as found by the court as a fact, its finding having been reached through an erroneous application of the law. Defendant insists that the property was community property which had not been disposed of by divorce decree and therefore should be treated under the provisions of section 27–805, A.C.A. 1939, section 25–318, A.R.S., wherein the parties would hold as tenants in common after the date of the decree.

In deciding this issue we must meet the question of whether the property was disposed of in the property settlement agreement.

Confronted with the statement in the agreement which had been incorporated in the decree of divorce of the parties entered in the superior court of Navajo County on January 23, 1952, to the effect that the parties declared the agreement to be a " * * * full, final and complete settlement of their property rights * * *," the trial court sought to find language in the agreement carrying out that intent. Admittedly the furnishings located in the home (referred to in the agreement as the "home place") were not mentioned anywhere in the property settlement agreement. As above pointed out, there is incorporated in the agreement a one-line paragraph providing that "Each party shall have his or her personal effects." The term "personal effects" is not used in ejusdem generis with any class of personal property whatever, but stands alone as the first provision of the agreement.

The trial court construed the term "personal effects" as used in the agreement, when coupled with the facts that all the other items of property both real and personal were divided by the terms of the agreement and the provision therein that the wife, appellee herein, was to have custody of the children, to mean that it was intended that appellee should have apportioned to her the "household furniture and fixtures" located in the house on the "home place" and cited Ellege v. Henderson, 142 Ark. 421, 218 S.W. 831, 832, the facts of which it is claimed are applicable to the instant case.

We cannot agree with this view. In the Ellege case, supra, the Elleges sold Henderson a 12- or 14-room hotel under an agreement which provided in part:

"'It is understood and agreed by us that all equipment and furnishings now in and around said house are to go to Henderson for the consideration of $4,000 as above stated except the own *personal effects* of said Elleges; in other words, the hotel is to be left fully equipped for business as it now stands.'" (Emphasis supplied.)

The Elleges occupied two rooms downstairs in the hotel which were specially furnished by Mrs. Ellege and were never let to guests. The Elleges moved the furniture in these two rooms from the hotel and Henderson brought an action in replevin to recover. The trial court rendered judgment for Henderson and the Elleges appealed.

The supreme court of Arkansas based its decision in construing the term "personal effects" as used in the contract on the rule of ejusdem generis, stating that:

"When the parties in a contract enumerate a particular class and immediately couple with that class the words 'personal effects' these words must be applied to articles ejusdem generis with those specified in the preceding part of the sentence. The par-

ties were dealing with a disposition of the equipment and furnishings of the hotel, and a fair and reasonable interpretation of the words 'except the own personal effects of said Elleges' would show that the parties referred to furnishings of the hotel which had been for the personal use of Mrs. Ellege and her family. It cannot be said as a matter of law that the parties were referring to articles usually worn on the person when as a matter of fact the sentence deals with the disposition of the furnishings of the hotel, * * *."

It can be readily seen that ejusdem generis can have no application in the instant case.

We have shown statements, above, alleged to have been made by decedent subsequent to the divorce and nowhere therein can we find anything that would justify the conclusion that the words "personal effects" were intended by the parties to the agreement to include the furnishings in the house on the "home place". The trial court expressly based its judgment on its interpretation of the contract as hereinabove pointed out without any reference whatever to the oral testimony. It is our view that the division of all the personal property in specific terms except that involved in this litigation indicates that its omission was an oversight and the oral testimony is in conflict as to what disposition the parties intended to make of it. It would have been a very simple matter to expressly provide that this property was to belong to appellee and that decedent should forthwith execute a bill of sale to her covering the same, as was done with the other personal property. If "personal effects" as used in the contract was intended to give appellee the furnishings of the house on the "home place" it would apply with equal efficacy to the furnishings in the living quarters at Knotty Pine Inn located in McNary which was provided to be conveyed to the husband by bill of sale.

We believe that when used without qualification or not used in context where ejusdem generis applies the term "personal effects" almost invariably is interpreted to mean personal property having a more or less intimate relation with the person of the possessor such as wearing apparel, jewelry, or other items of property of like character. In re Lippincott's Estate, 173 Pa. 368, 34 A. 58; Ettlinger v. Importers' and Exporters' Insurance Co. of N. Y., 138 Misc. 743, 247 N.Y.S. 260, 261.

The testimony of appellee clearly indicates that her understanding of the term "personal effects" which she used several times during the course of her examination was limited to articles such as wearing apparel and other items intimately related to her person or to the person of decedent, thus eliminating any idea that it included the furniture or furnishings located on the "home place".

It is quite clear that whatever the intent of the parties may have been with

respect to the disposition of the personal property here involved, they did not express that intent in the property settlement agreement between them. That this personal property belonged to the community prior to the execution of the property settlement agreement is not questioned by anyone and under the provisions of section 27–805, supra, providing that where a decree of divorce fails to make disposition of the community property it shall be held by the parties as tenants in common from the date of the decree, each possessing an undivided one-half interest therein, it is inescapable that such property subsequent to the decree of divorce and up to the date of the death of decedent was held as tenants in common by appellee and decedent. Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755.

We held in the case of In re Nolan's Estate, 56 Ariz. 366, 108 P.2d 391, 395, that:

"'The domiciliary representative [executor or administrator] becomes invested with the title to all the personal property of the deceased, wheresoever situated, for the purpose of collecting the effects of the estate, paying the debts and making distribution of the residue according to the law of the place or directions of the will, as the case may be. * * *' 21 Am.Jur. 854, § 861."

It therefore became the duty of the executor in the instant case to reduce any personal property belonging to the estate of the deceased to possession for the purpose of paying debts and making distribution of the residue. In the instant case he would have no authority to sell the personal property involved in the absence of the consent and cooperation of the other co-tenant. If it is of such a character that it can be partitioned by agreement of the parties, the court may, after distribution upon petition therefor, order such partition made. If not, the personalty must be sold and the proceeds thereof distributed between the estate of the decedent and the appellee.

The above disposition of the case makes it unnecessary to consider assignments five and six.

Judgment of the lower court is reversed.

LA PRADE, C. J., and UDALL and WINDES, JJ., concur.

STRUCKMEYER, Justice (dissenting).

I dissent. The majority of this court have decided an issue of fact upon which there is conflicting evidence in holding that the property, the subject matter of this dispute, was owned as tenants in common by Marion Leslie Hatch and Marie Hatch Jones.

In order to understand the nature of this litigation certain facts should be emphasized. Marion Leslie Hatch and Marie Hatch, husband and wife, entered into a property separation agreement on October 30, 1951. On January 23, 1952, a divorce in favor of Marie Hatch was granted and the separation agreement was approved by

the court. On March 22, 1953, nearly a year and two months after the entry of the decree of divorce Marion Hatch died. Neither the separation agreement nor the decree of divorce specifically referred to the household furnishings of the parties located in what is called the "home place".

This lawsuit is an action by the plaintiff Marie Hatch Jones alleging in effect that the household furnishings belonged to her and that they were converted by the defendant, executor under the last will and testament of Marion Hatch, deceased. The answer admitted that defendant took possession of the property and affirmatively alleged that the property was the community property of Marion Leslie Hatch and Marie Hatch, now Marie Hatch Jones. The case was tried to the court without a jury. The first issue necessary to be resolved by the court below as a predicate for the claimed conversion was the ownership of the property in question. The court below concluded as a matter of law independent of the oral testimony that under the first clause of the separation agreement providing: "Each party shall have his or her personal effects" the household furnishings in the home place belonged to plaintiff Marie Hatch Jones. It was the opinion of the court that the words "personal effects" were sufficiently broad to include the household furnishings.

I concur with the majority opinion to the extent that the trial court erred in concluding that the words "personal effects" are broad enough to include household furnishings. I cannot concur in the statement that:

"* * * it is inescapable that such property subsequent to the decree of divorce and up to the date of the death of decedent was held as tenants in common by appellee and decedent."

Plaintiff testified:

"Q. Now in your property settlement agreement the land was described but for the information of the Court, which place did you take? A. I took the Knot Inn.

"Q. That's the Pinetop property? A. The Pinetop business place, the Knot Inn.

"Q. And Marion took the—A. The garage, Richfield station up on the hill and the Knotty Pine in McNary.

"Q. Including the apartment? A. And the furniture and apartment.

"Q. And all the furniture? A. That's right.

"Q. And the furniture and fixtures and personal effects of the home, who took those? A. I took them. They were mine."

And again she testified:

"Q. Now one time, Mrs. Jones, prior to the death of Mr. Hatch, had you arranged, you and Mr. Hatch, arranged to sell this property? A. We were selling the house and the furni-

ture. I was to move to Phoenix and take the little boys and either rent or buy a place and move that furniture."
And again:

"And the sale fell through (of the home place) because they wanted the furniture and the furniture was not in the agreement. It was mine."

The defendant did not cross-examine Mrs. Hatch on the statements that the furnishings were hers so that the record does not reflect an explanation as to how or when she acquired the ownership.

Mrs. Jones' testimony was corroborated by the testimony of Frank Marquez:

"Q. What was said at that time, if anything, by Mr. Hatch with reference to who owned this furniture and the things in the house at this time? A. Nothing. Mr. Hatch, I know he wouldn't tell a lie, and I won't tell a lie here. I asked him for something inside the house to buy—

"Q. Were you buying some of his furniture at McNary? A. Yes, and he said, 'Everything you bring from McNary is mine but everything inside the house is not mine; it belongs to Marie and the house belongs to the kids.'

"Q. That is when you were trying to buy some furniture from him? A. Yes.

"Q. And you did buy some from him? A. I bought some from—he

gave it to me mostly but inside I was going to buy a couch and he said, 'This is not mine, Frank. This belongs to Marie. You can talk to Marie about it.' So I let it go."

While the defendant alleged that the household furnishings and furniture was community property, his proof by Mrs. Irene Hays, sister of the deceased, Marion L. Hatch, contradicted his affirmative defense showing that the furnishings belonged to the two boys.

"Q. What did he (Marion Hatch) tell you? A. He said that the home had been put in a trust fund with the furnishings for the children, all but this one set of dishes, and he said that she is to take that but she took the silverware so she doesn't get the dishes now.

"Q. He didn't tell you then that it belonged to Marie? A. No, he didn't. He told me that she was to take the dishes; he had made that agreement with her. That she was to take the dishes.

"Q. Now then did you have any other conversation with him as to this property? Now I am referring to the furniture in that home place there. A. Only that the furnishings went to the little boys, all but the dishes."

The conversations here related by Mrs. Hays and Frank Marquez were held at some time after the divorce. There are, of course, other facts and circumstances

which, coupled with the above stated testimony, might enable the trial judge to ascertain the true ownership of the property.

Now, Section 27–805, A.C.A.1939, provides in part that:

"any community property for which no provision is made in the decree shall be from the date of such decree, held by the parties as tenants in common, each possessed of an undivided one-half interest therein."

While this statute establishes the character of community property undisposed of by the decree of divorce, it does not provide that such property shall be owned as tenants in common forever and, of course, does not forbid or otherwise contemplate that one of the tenants in common may not transfer his or her rights in the property to the other by gift or sale subsequent to the decree. Also, the statute only operates on community property. If in fact the property was not community property prior to the divorce either because of possible gift by husband to wife or by oral agreement prior to, contemporaneous with, or subsequent to the execution of the written agreement it would be the separate property of the plaintiff. As stated, no explanation was offered or requested as to the basis of Mrs. Jones' statement that the furnishings were hers, but this court is not at liberty to disregard the direct, positive and unequivocal statement of ownership. The truth of such must be determined by the trial judge in accordance with the rules of law governing the weight of evidence and credibility of witnesses. Similarly the testimony of Mrs. Hays as to the ownership of the property being in the two boys must be weighed and balanced against the other facts and circumstances in the case.

As pointed out the trial court determined ownership as a conclusion of law from the language used in the separation agreement. The cause should be remanded to the trial court for such further proceedings as are necessary to a complete determination of the questions of fact presented.

"Although the reviewing court may, in cases where the evidence is not conflicting, or the facts are admitted or conceded, possess power to render final judgment, or direct judgment to be entered in favor of one of the parties, generally it may be said that it cannot, in reversing a judgment, direct judgment to be entered for one of the parties, where there are disputed questions of fact, or where the evidence upon any material issue is conflicting and reasonable minds might disagree." 3 Am.Jur. 708.

This is the accepted practice everywhere as it is in Arizona. Maricopa County Municipal Water Conservation Dist. No. 1 v. Southwest Cotton Co., 39 Ariz. 367, 7 P.2d 254.

Supplemental Opinion on Rehearing

Our original opinion in this case is hereby affirmed in toto, but for the purpose

of clarification we are supplementing it with the following: We intended therein to hold that the furniture, fixtures and furnishings, utilities and utensils located at the "home place" ordinarily classified as household furnishings were held by Marie Hatch Jones, appellant, and Marion Leslie Hatch as tenants in common subsequent to the date of the decree of court divorcing them. We held that household furniture, fixtures and furnishings did not fall within the category of "personal effects", reversing the holding of the trial court to that effect.

We did not intend to make any disposition of the "personal effects" belonging to appellant. The contract involved in this litigation provided that she was entitled to her "personal effects". We were of the view that we could presume that all articles falling in the category of "personal effects" belonging to Mrs. Jones would be delivered to her, such as luggage, wearing apparel, jewelry, all kinds of bric-a-brac collected over the years, handmade bed spreads or crocheted tablecloths, etc., albums, pictures and all other items of personal property having a more or less intimate relation with her person. In our opinion we defined "personal effects" as meaning:

"Personal property having a more or less intimate relation with the person of the possessor such as wearing apparel, jewelry, or other items of property of like character."

The trial court should order items of this character delivered to appellant.

LA PRADE, C. J., UDALL and WINDES, JJ., concur.

STRUCKMEYER, Justice (concurring). I concur in this opinion as to its clarification of the original opinion.