379 P.2d 908

Luria Jean DEMPSEY and Cal Boles, as Sheriff of Maricopa County, Arizona, Appellants.

v.

James E. OLIVER and Emma S. Oliver, husband and wife, Appellees.

No. 6963.

Supreme Court of Arizona.
En Banc.

March 20, 1963.

George M. Sterling, Phoenix, for appellants.

Perry & Perry, Phoenix, for appellees.

LOCKWOOD, Justice.

This is a suit to quiet title to real property located in Maricopa County, Arizona, which resulted in judgment in favor of plaintiff-appellees, James E. Oliver and Emma S. Oliver, and against defendant-appellant, Lurla Jean Dempsey. The matter was submitted on an agreed statement of facts.

On June 2, 1948, Dempsey obtained a judgment of $2950.75 against one Eleanor Moriarty as her separate obligation, which judgment was recorded in the office of the County Recorder of Maricopa County, Arizona on June 7, 1948. At that time, Eleanor Moriarty was the wife of Thomas W. Moriarty and they owned as community the real property which is the subject of this action. On May 29, 1953, since the judgment remained unpaid, an affidavit for renewal thereof was filed with the clerk of the Superior Court and a certified copy recorded with the County Recorder. The affidavit was executed by Ruby B. Sterling, as secretary for George M. Sterling, who was attorney of record for the judgment-creditor.

On May 25, 1955, in the State of Ohio, Thomas W. Moriarty was granted a divorce from Eleanor Moriarty. The decree of divorce made no disposition of any property of the parties. It was not recorded at any time in Maricopa County. Eleanor Moriarty subsequently entered into an agreement of sale of the property to Joseph and Geraldine Kerstein, purporting to act on behalf of herself and as attorney in fact for Thomas W. Moriarty. This agreement was recorded on January 16, 1957. A deed of conveyance executed by Eleanor Moriarty for Thomas W. Moriarty and herself, *as husband and wife,* to the Kersteins was recorded August 8, 1957. The Kersteins on October 17, 1957, conveyed the property to the Olivers, plaintiffs herein.

Neither the judgment-creditor nor the grantees of Moriarty learned of the divorce decree until after the sale to plaintiffs. At the time of the transfer of the property to the Kersteins, Eleanor Moriarty furnished to the escrow agent, a title company, an identity statement in which she stated that she was still the wife of Thomas W. Moriarty. The judgment-creditor first learned of the divorce on or about November 6, 1957, and on November 26, 1957, caused notice of her judgment to be given to plaintiffs and to their mortgage company. Following negotiations between the parties the judgment-creditor caused a writ of execution to be issued on February 7, 1958, and the sheriff levied on the real property. Plaintiffs then filed their complaint in this action seeking an injunction against enforcement of the writ of execution and for judgment to quiet title to the property in them.

The trial court found in favor of the plaintiffs and held that the judgment against the wife in her separate capacity could not be enforced against the property in ques-

tion. Defendant Dempsey submits a number of assignments of error. However, because of the disposition to be made of this case we need only discuss the following issue: Can the recorded judgment lien be defeated by a conveyance of the property of the judgment debtor to a grantee who is without actual or constructive knowledge of the nature of the grantor's changed interest in the property?

Plaintiffs correctly claim that a judgment lien against the wife as her separate obligation does not attach to property held by herself and her husband as community property. Tway v. Payne, 55 Ariz. 343, 101 P.2d 455 (1940). However a lien will attach to separate property acquired by the wife after the judgment lien is recorded. A.R.S. § 33–964(A). The effect of the divorce without the disposition of the property of the parties was to make Thomas Moriarty and Eleanor Moriarty tenants in common in the subject property.[1] The wife's interest in the property thereupon became her separate property subject to her separate disposition and the judgment lien would have attached to it at that time so far as the judgment-creditor was concerned.

Plaintiffs' position is that the record title to the property was in Eleanor and Thomas Moriarty as husband and wife. Eleanor purported to sell the property to plaintiffs'

predecessor in interest as the wife of Thomas with power of attorney to act also for him and that so far as the purchaser was concerned, he was buying the community property of the Moriartys. Plaintiffs contend that since at the time of the original sale the vendee had no knowledge or notice of the change in ownership effected by the Moriarty divorce, the transaction was a bona fide purchase without notice of any encumbrance, and therefore superior to the judgment lien.

Apparently this precise question has not been resolved in any jurisdiction. Generally, judgment liens will attach to after-acquired property immediately, if the judgment lien is recorded in the same county; and a person purchasing the land from the judgment debtor must take the land subject to the judgment lien. However, in this case a different situation exists. The recorded lien on its face was only effective against the separate property of Eleanor Moriarty, and according to all the public records in the county available to any purchaser, this property was shown only as community property of Eleanor Moriarty and her former husband. The purchaser had no actual knowledge of the divorce of the Moriartys, and the circumstances surrounding the transaction between Eleanor Moriarty and the purchaser were not such

1. A.R.S. § 25–318(D). The foregoing statute was in force at the time of the divorce of the parties in this action. It

has since been amended as A.R.S. § 25–318(G); however the context and meaning remain the same.

as to put a person of ordinary prudence and intelligence upon inquiry as to any separate interest of Eleanor Moriarty. She represented that she was married and she had the power of attorney to act for her husband in this matter.[2] Therefore, in the absence of such facts sufficient to put the purchaser on inquiry, he could assume that the title was completely disclosed on the records, and was entitled to rely thereon. Paganelli v. Swendsen, 50 Wash.2d 304, 311 P.2d 676 (1957); Allison v. Curtis, 62 N.M. 387, 310 P.2d 1042 (1957); 92 C.J.S. Vendor & Purchaser § 335, p. 250.

■ We hold that the purchaser in this case was a bona fide purchaser in good faith and for value inasmuch as he had no notice, either actual or constructive, of the divorce decree,[3] and therefore his rights were prior to those of the judgment creditor.

Judgment affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER, and JENNINGS, JJ., concur.

2. Compare A.R.S. § 33–452, which makes invalid a conveyance of community realty unless executed and acknowledged by both husband and wife, and A.R.S. § 33–454, which states that either husband or wife may authorize the other by power of attorney to execute, acknowledge and deliver any conveyance affecting community property.

3. Cf. Ross v. Beall, Tex.Civ.App., 215 S.W. 2d 225 (1948); The court therein stated that the person who purchased the land from the purported husband was an innocent purchaser and acquired good title

to the land. By statute, Vernon's Civ. Stat.Anno., Art. 4619 § 1, only the husband can dispose of community property in Texas. The former wife claimed the divorce severed the community property, thus he couldn't dispose of her separate interest. This claim failed against the purchaser as no record of the purported divorce decree was filed in the county and no actual knowledge of the divorce was had by the purchaser. See also Myers v. Crenshaw, Tex.Civ.App., 116 S. W.2d 1125 (1938).