534 P.2d 295
**Shirley B. HATCH, Appellant,**
v.
**Dwight Keith HATCH, Appellee.**
**Nos. 1 CA–CIV 2024, 1 CA–CIV 2102.**

Court of Appeals of Arizona,
Division 1,
Department C.
April 15, 1975.
Review Granted July 10, 1975.

Moeller, Henry & La Velle by James Moeller, Phoenix, Garbarino & Lee, Flagstaff, for appellant.

Axline, Johnson & Gardner by Raleigh Johnson, Holbrook and Porter, Stahnke & Phillips by Bernald C. Porter, Tempe, for appellee.

## OPINION

WREN, Judge.

The appellant in this divorce action, Shirley Hatch, has made three claims of error committed by the trial court: (1) the nature of the division of community property; (2) the entry of a nunc pro tunc order which reduced the amount of past-due support owed to appellant; and (3) the refusal to grant appellant any attorneys' fees or costs.

Appellant and appellee, Dwight Keith Hatch, were married in 1953. In 1966, appellant filed for a divorce which was ultimately granted in 1968. The judgment awarded custody of the couple's three minor children to appellant, and reserved the remaining issues. Further proceedings in 1968 and 1969 resulted in a supplemental judgment being entered in November of 1969, which divided the community property, awarded child support, and denied appellant's request for alimony and attorneys' fees.

In March of 1970, appellant was granted a new trial, resulting in further proceedings during that year and in 1971. On February 10, 1972 a second supplemental judgment was entered, which decreed the same property distribution as the 1969 judgment and again denied a request by appellant for attorneys' fees and costs.

### COMMUNITY PROPERTY

It is uncontroverted that the community property was not divided evenly, but rather was distributed so as to give appellee the greater portion.[1] Appellant argues that the trial court erroneously ordered the unequal distribution to reward appellee and punish appellant for what the court considered to be her contribution to the deterioration of the father-daughter relationship. Appellee, on the other hand, asserts that estate, and that the division of property appellant had mismanaged the community was based upon the court's finding that appellee, as a result of successful efforts to preserve and protect the community estate, deserved the greater share.

In support of their respective positions, both parties rely on various statements made by the trial court. We find it unnecessary to set them forth here as both views are embodied in the second supplemental judgment, which states in pertinent part:

*"In making the property settlement hereinabove made, the Court has taken into full consideration the relative efforts of the parties in seeking to preserve and protect the community estate and has intended to amply reward [appellee], for his successful efforts in connection therewith. The Court has also considered, to some extent, the fact that the [appellant] has willfully and deliberately destroyed any meaningful father-daughter relationship between the [appellee], and his children . . . . "*

---

1. The most valuable assets comprising the community estate were two pieces of real property. The appellant was awarded one of these tracts, which had been appraised at $27,400. The other, given to appellee, had been appraised at $167,000.

A.R.S. § 25-318(A) (1956),[2] sets forth the basic premise for judicial distribution of community property:

"On entering a judgment of divorce the court shall order such division of the property of the parties as to the court seems just and right . . .."

This provision has been construed by the courts to rest the apportionment within the sound discretion of the court. Nace v. Nace, 104 Ariz. 20, 448 P. 2d 76 (1968); Wine v. Wine, 14 Ariz.App. 103, 480 P.2d 1020 (1971). The court does not have to divide the property evenly, only equitably. Kamrath v. Kamrath, 17 Ariz.App. 394, 498 P.2d 468 (1972); Gage v. Gage, 11 Ariz.App. 76, 462 P.2d 93 (1969). This discretionary power is very broad and will not be disturbed unless it clearly appears that it has been abused. Reed v. Reed, 82 Ariz. 168, 309 P.2d 790 (1957); Honig v. Honig, 77 Ariz. 247, 269 P.2d 737 (1954).

However, there are limits within which this discretion must be exercised. Apportionment of the community estate should be substantially equal in the absence of some reason requiring contrary action. Britz v. Britz, 95 Ariz. 247, 389 P.2d 123 (1964); Honig, supra. In Britz for example, the court recognized the validity in Honig of awarding a "lion's share" of the community property to the spouse whose labors, frugality and business sense were largely responsible for the existence of the community estate. As justified in Honig, "one cannot expect to reap in fields he has never sown."

The parameters of judicial discretion were further delineated in Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948), which pointed out that it must be exercised in accordance with the mandate of equitableness set forth in A.R.S. § 25-318, and not to the end that one party be rewarded or that the other party be punished. This reward-punishment prohibition has been stated in a number of cases subsequent to Porter. Britz, supra; Reed, supra; Honig, supra; Witherspoon v. Witherspoon, 17 Ariz.App. 391, 498 P.2d 233 (1972); Calderon v. Calderon, 9 Ariz.App. 538, 454 P.2d 586 (1969).

Appellant asserts that the court's consideration of any misconduct on the part of appellant in alienating the affections between appellee and his daughters, was prohibited in its division of the community estate and constituted an abuse of discretion. Porter, supra.

We cannot agree. The reward-punishment prohibition was espoused by the court in Porter in the abstract. We think the import of the rule expressed therein is both unclear and misleading. Its meaning is certainly not evident from the facts of Porter where the party at fault and against whom the divorce was granted was awarded the bulk of the community property. The court reasoned that settlement of property rights was not dependent upon the success or failure of the divorce itself.

If the import of the prohibition is that a party awarded a divorce should not be given the bulk of the property, based solely on the fact that he was successful in obtaining a divorce, then we think the rule is sound. When analyzed on their facts cases since Porter carry us no further than that simple proposition. Certainly, there are other factors to consider in determining what is "fair and just", including custody of the children, Reed, supra; health of the parties, Britz, supra; and as previously stated, the contribution each party has made to the community, Britz, supra; Honig, supra. However, to say that moral fault or violation of marital responsibilities is an improper and prohibited consideration in dividing the property is in our opinion incorrect and inconsistent with decisions that have considered these factors.[3] See Reed, supra; Honig, supra; Pendleton v. Brown, 25 Ariz. 604, 221 P. 213 (1923);

2. This case was decided prior to the repeal of § 25-318 (1956) in 1973.

3. We note that under Arizona's present divorce laws, enacted after this case was decided and therefore inapplicable here, "marital misconduct or fault" is not a proper consideration in dividing property. See A.R.S. § 25-318 (Supp.1973).

Spector v. Spector, 17 Ariz.App. 221, 496 P.2d 864 (1972); Finck v. Finck, 9 Ariz. App. 382, 452 P.2d 709 (1969).

■ Also, we are fully aware that there are many facets of an intangible nature, not reflected by a cold record, which must necessarily have been weighed by the trial court in arriving at its decision. We are cognizant of the difficulty attendant upon property distribution in divorce decrees wherein the court must often deal with an offending party and intolerable conduct. It is for these reasons that appellate courts have long enunciated the doctrine that all reasonable inferences must be taken in favor of sustaining the judgment of the trial court. Day v. Day, 20 Ariz.App. 472, 513 P.2d 1355 (1973).

■ In light of the foregoing principles we are constrained to hold that the court's unequal property distribution was neither unreasonable nor an abuse of discretion.

## NUNC PRO TUNC ORDER

Turning next to appellant's second contention, it appears that the first support order was made on July 19, 1968, directing appellee, "to pay support to [appellant] and the four [sic] minor children, the sum of $275.00 semi-monthly on the 8th and 23rd days of each month hereafter . . . ." This order was reaffirmed on March 6, 1969, by the following language:

"Let the record show the Court finds [appellee] has an obligation of support to three children and that the previous order of support is valid and effective until the Court makes further order in this matter . . . ."

Subsequently, the supplemental judgment of November 17, 1969, reduced the amount of child support payments by requiring appellant to pay $150.00 semi-monthly.

In May of 1970, the court amended nunc pro tunc, its order of March 6, 1969, by reducing the amount of child support from $550 per month (as provided for in the July, 1968 order), to $275 per month; the change to be effective from the entry of the court's order on March 6, 1969. The court explained that at the time of the entry of the March 6th order, it was under the impression that its previous support order of July, 1968, was for $275 *per month*, and not $275 *semi-monthly*; and that it intended at the time of making the March 6th order, to allow only $275 *per month*.

Appellant challenges the amendment, asserting that the court lacked jurisdiction to enter the modifying order. She points to the well established law that support payments may not be retroactively decreased or increased. McClanahan v. Hawkins, 90 Ariz. 139, 367 P.2d 196 (1961); Johnson v. Johnson, 46 Ariz. 535, 52 P.2d 1162 (1935); Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995 (1934).

Appellee acknowledges the foregoing principle of law, but argues that since a court retains jurisdiction to direct a modification effective from the date a petition for such modification is filed, McClanahan, *supra*; Crook v. Crook, 80 Ariz. 275, 296 P.2d 951 (1956), and since appellee filed a petition to modify the support order in October of 1968, the amendment was properly entered.

We agree with the correctness of appellee's statement of the law, but disagree with its application here. It is readily apparent that the order entered in May of 1970 was not premised upon a petition which had long since been disposed of by the court.

■ Nor do we agree with appellant's assertion that the minute order of July, 1968, was ineffective, since it was not embodied in a formal written order. We are not concerned here with the appealability of the order, only its efficacy to require support payments from appellee, and clearly the order was valid and binding for that purpose.

■ Finally, the court's nunc pro tunc order cannot be sustained on the basis that it constituted a correction of a clerical mistake under Rule 60(a), Rules of Civil Pro-

cedure, 16 A.R.S.[4] The court's "mistaken impression" was an error related not to form, but to substance. By its amendment, the court sought not to clarify its previous order, but to change it; and in doing so, it substantially affected the rights of appellant. *See* Harold Laz Advertising Co. v. Dumes, 2 Ariz.App. 236, 407 P.2d 777 (1965).

The basic rationale of Rule 60(a) is clarified in United States v. Stuart, 392 F.2d 60, 62 (3rd Cir. 1968):[5]

> "[R]ule 60(a) is concerned primarily with mistakes which do not really attack the party's fundamental right to the judgment at the time it was entered. It permits the correction of irregularities which becloud but do not impugn it."

The distinction between "clerical errors" subject to an amendment nunc pro tunc, and "judicial errors" not subject to such correction is not easily demonstrated. As pointed out in the following quotation from 46 Am.Jur.2d, Judgments § 202 (1969):

> "It is often difficult to distinguish between a clerical error in the record of a judgment subject to correction by an entry nunc pro tunc, and a judicial error not subject to such correction. Generally, the distinction is not regarded as dependent upon the source of the error. The important question is not who made the error, but whether the error was made in rendering the judgment, or in recording the judgment rendered. . . .

> "The phrase 'clerical error' has been said to be employed in a broad sense, as distinguished from 'judicial error', to cover all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. A test sometimes used to determine whether an error in a judgment is a judicial or a mere clerical one is whether the mistake re-

lates to something the court did not consider and pass on, or considered and erroneously decided, or whether there was a failure to preserve or correctly represent in the record, in all respects, the actual decision of the court."

We believe that the cases cited by appellee in his brief are classical examples of "clerical error" decisions and therefore are not supportive of his position. For example, a correction nunc pro tunc was held proper in the following instances: to amend a written order so as to conform to minute order of same date, Minardi v. Collopy, 49 Cal.2d 348, 316 P.2d 952 (1957); *accord,* Smith v. Smith, 115 Cal.App.2d 92, 251 P.2d 720 (1952); to supply omitted language to judgment to conform with statutory provision, and to add numerical figures omitted from blank spaces provided for such in judgment; Lang v. Superior Court, 198 Cal.App.2d 16, 18 Cal. Rptr. 67 (1961); where divorce decree awarded each party a separate parcel of real property, to require one party to quitclaim her interest in the property that had been awarded to the other party, Cazzell v. Cazzell, 133 Kan. 766, 3 P.2d 479 (1931). Appellee also cites Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95 (1929), a case involving judicial error where the trial court's construction of a divorce decree subsequent to its rendition, which had the effect of reducing the amount of child support required to be paid, was held to be improper since the language of the decree was unambiguous.

Arizona cases also elucidate a distinction between judicial and clerical errors, particularly when analogized on their facts. In Wells v. Valley National Bank of Arizona, 109 Ariz. 345, 509 P.2d 615 (1973), amending an "in personam" judgment to an "in rem" judgment was held to be an improper correction of a judicial error. Likewise, in Harold Laz, *supra,* where an initial judg-

---

4. "60(a) Clerical Mistakes. Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on motion of any party and after such notice, if any, as the court orders."

5. Arizona Rule 60(a) is based on the federal counterpart Rule 60(a), 28 U.S.C.

ment ordered individual defendants to transfer stock, amending judgment to require corporate defendant to transfer stock was held to be a prohibited correction of judicial error. In Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960), involving an action against an administratrix to recover property based on an alleged partnership agreement, the court reasoned that amending a judgment awarding plaintiff a sum of money from "property of said estate" to "property accumulated by the parties under the terms of the agreement" could hardly be classified as clerical.

On the other hand, in Wood's Pharmacy, Inc. v. Kenton, 50 Ariz. 53, 68 P.2d 705 (1937), where a dismissal "with prejudice" was entered by the clerk, an amendment changing the dismissal to "without prejudice" was held to be proper where party requesting the dismissal had not requested that it be with prejudice and trial judge did not believe he ever entered such an order. Accord, Rae v. Brunswick Tire Corp., 45 Ariz. 135, 40 P.2d 976 (1935). Likewise, in American Surety Co. v. Morsher, 48 Ariz. 552, 64 P.2d 1025 (1936), correcting minutes of court to show that judgment was rendered on a certain day was held to be proper where written judgment recited over signature of trial judge that it was "done in open court."

Commenting on nunc pro tunc orders in general the Supreme Court in Rae, *supra*, stated:

"The purpose of such an order is to make the records speak the truth . . . but . . . the court may not do more than make its records correspond to the actual facts; it cannot under the guise of amending a minute entry correct any judicial error it may have made, or cause an order or judgment that was never in fact made to be placed of record. In other words, the office of a nunc pro tunc order is to record now for then what actually did occur." 45 Ariz. at 142–143, 40 P.2d at 979.

It is readily apparent that the object of an order nunc pro tunc is only to place in proper form on the record the judgment that had been previously and *actually* rendered. The court's order here which retroactively reduced support payments was improper and cannot be sustained. McClanahan, *supra*; Johnson, *supra*; Adair, *supra*.

### ATTORNEYS' FEES

Awarding of attorneys' fees and costs is, of course, a discretionary matter with the trial court. Drees v. Drees, 16 Ariz.App. 22, 490 P.2d 851 (1971); Reich v. Reich, 13 Ariz.App. 98, 474 P.2d 457 (1970). The purpose of such an allowance is to assure that the wife may have proper means to litigate the divorce action. Davis v. Davis, 9 Ariz.App. 49, 449 P.2d 66 (1969).

This record reflects a matter that was before the trial court for almost six years, and one which involved extensive and vigorously contested proceedings. Moreover, appellant testified that during this period of litigation she was forced to borrow substantial sums of money for support; and that she suffered from a back injury which impaired her ability to work. Her request for $7,500 for attorneys' fees and costs was denied. In light of the foregoing evidence as to appellant's financial needs, and the unequal distribution of the community property in favor of appellee, we hold that the trial court abused its discretion in refusing to award appellant attorneys' fees and costs. To determine the amount thereof, we remand the case to the Navajo County Superior Court for its consideration.

The judgment of the trial court is affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent wtih this opinion.

NELSON, P. J., Department C, and FROEB, J., concur.