547 P.2d 1044

**Shirley B. HATCH, Appellant,**

v.

**Dwight Keith HATCH, Appellee.**

**No. 12175–PR.**

Supreme Court of Arizona,
In Banc.

March 19, 1976.
Rehearing Denied April 20, 1976.

Moeller, Henry & Lavelle, by James Moeller, Phoenix, Garbarino & Lee, Flagstaff, for appellant.

Axline, Johnson & Gardner, by Raleigh Johnson, Holbrook, Porter, Stahnke & Phillips, by Bernald C. Porter, Tempe, for appellee.

STRUCKMEYER, Vice Chief Justice.

In this suit for divorce brought by Shirley B. Hatch against Dwight Keith Hatch, the Superior Court granted Shirley B. Hatch a judgment of divorce, awarded her the custody of the three minor children of the parties, awarded child support, divided the community property, but denied her alimony, costs of suit, attorney's fees and a judgment for $3,875 for arrearages on past due child support payments. This appeal questions the division of the community property, the denial of attorney's fees, costs, and the failure of the court below to enter judgment for $3,875, the amount of past due arrearages. The Court of Appeals affirmed in part and reversed in part. We accepted review. Opinion of the Court of Appeals, 23 Ariz.App. 487, 534 P.2d 295 (1975), vacated. Judgment of the Superior Court reversed.

In the light of the expanded concept of the equal rights of women as it exists today and before considering the claims of the parties, certain aspects of the community property law as it has developed in Arizona should be examined.

As a part of the New Mexico Territory, Arizona inherited the community property system which existed in Spain and Mexico. In 1863, Arizona become a separate territory and in 1865 the Territorial Legislature confirmed by law that the community system prevailed in Arizona. Laws of 1865, Ch. XXXI at 60. The community property laws were codified in 1901. *See* Rights of Married Persons, §§ 3102–3111, R.S. 1901. In 1910, by Article 22, § 2 of the Arizona Constitution, all the laws of the Territory of Arizona then in force were adopted as the laws of the State of Arizona until altered or repealed by the Legislature.

William deFuniak, in his Principles of Community Property, states:

"The Spanish law of community very plainly provided that 'Everything the husband or wife may earn during union, let them both have it by halves.'" Vol. I, pp. 261–262.

■ It has been the rule in community property states that during coverture the respective interests of the husband and wife in community assets are equal. This is true in Arizona.

"Under the community law of this state the spouses own their common property and the wife's interest is equal to that of the husband's." *Coe v. Winchester,* 43 Ariz. 500, 503, 33 P.2d 286, 287 (1934).

The only real argument in community property states has been not whether the wife's interest is equal to that of her husband's but whether the wife's one-half interest in the community is an immediate, present ownership of half of the community property or whether she had merely an inchoate interest in half during the marriage which vested in her fully upon the dissolution of the marriage. This was settled in favor of immediate, present ownership by the United States Supreme Court in holding that, consistent with the Constitution of the United States, the legislature of New Mexico could not pass a law putting an end to the wife's interest in the community without just compensation. *Arnett v. Reade,* 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477 (1911).

In examining the status of the wife's interest in community property, it was long ago held that her interest was vested during coverture.

"The Supreme Court of the United States, in cases arising from some of the other states having laws establishing matrimonial communities similar to those of Louisiana, has had occasion to consider the nature of the interest of the wife therein, and, while the question here raised was not involved, i. e., the ownership of one-half of the community income, nevertheless it has uniformly held (except as to the state of California where the statutory provisions are materially different) that the interest of the wife is a vested one and not a mere expectancy. * * * The interest is of such a nature that, if it were sought to be divested by a statute seeking to abolish

the community, the same would probably be unconstitutional as destroying a vested right. *Dixon v. Dixon's Executors,* 4 La. 188, 23 Am.Dec. 478; *Arnett v. Reade,* supra." *Pfaff v. Bender,* 38 F.2d 642, at 645 (E.D.La.1929).

This Court has held:

"The wife is no longer a chattel in the United States and especially is this true in Arizona where she has a vested right in the community property * * *." *Grimditch v. Grimditch,* 71 Ariz. 198, 203–204, 225 P.2d 489, 492 (1950), modified on other grounds, 71 Ariz. 237, 226 P.2d 142 (1951).

And in *Schwartz v. Schwartz,* we said:

"There can be no question but that the husband and wife as long as they are such are equal owners of the property acquired by their joint efforts during coverture. *La Tourette v. La Tourette,* 15 Ariz. 200, 137 P. 426, Ann.Cas. 1915B, 70; *Molina v. Ramirez,* 15 Ariz. 249, 138 P. 17." 52 Ariz. 105 at 109, 79 P.2d 501, at 502, 116 A.L.R. 633 (1938).

The vested nature of the wife's interest is so taken for granted that if community property is not distributed in a divorce decree, it is accepted without argument that the husband and wife each own an undivided one-half interest in the former community assets as tenants in common. *Dempsey v. Oliver,* 93 Ariz. 238, 379 P.2d 908 (1963); *Hatch v. Jones,* 81 Ariz. 5, 299 P.2d 181 (1956).

This divorce action was commenced on October 4, 1966. Shirley Hatch was awarded a divorce about a year and five months later on February 23, 1968. The record amply demonstrates that her husband was guilty of extreme cruelty in the use of physical violence upon her.

■ At the time that Shirley Hatch was awarded a divorce, on February 23, 1968, the court reserved its ruling as to the division of the community property, child support for their three minor daughters, alimony and attorney's fees. This was contrary to the express provisions of the statute, A.R.S. § 25–318A, *see* Laws 1962, Ch. 45, § 1, *infra,* which explicitly provided that upon entering a judgment of divorce a division of the property of the parties shall be ordered by the court. The final order of the court dividing the property from which this appeal was taken did not occur until February 10, 1972. In the intervening four years, many things occurred which the trial court should have anticipated in the light of failure to resolve the other issues attendant on the dissolution of the marriage.

In the final distribution of the community, Mrs. Hatch was awarded a tract of land which some of the evidence established as having a value of $27,400, and her former husband was awarded a tract of land with an estimated value as high as $170,000. Nor was Mrs. Hatch awarded any other property of substantial value which might have equalized the division.

Appellee argues that "the trial court is not required to divide the property evenly, only equitably." However, even the word "equitable" is defined by Webster as "characterized by evenness." Webster's Third New International Dictionary (1965). It is apparent that such a gross disparity, uneven and inequitable distribution of the community assets, could not have been other than whimsical and arbitrary.

■ The record affirmatively establishes that the trial court's distribution was whimsical and arbitrary. The court stated in its second supplemental judgment:

"In making the property settlement hereinabove made, the Court has taken into full consideration the relative efforts of the parties in seeking to preserve and protect the community estate, and has intended to amply reward defendant, DWIGHT KEITH HATCH, for his successful efforts in connection therewith. The Court has also considered, to some extent, the fact that the plaintiff has wilfully and deliberately destroyed any meaningful father-daughter relation-

ship between the defendant, DWIGHT KEITH HATCH, and his children * * *."

If we understand the court below, it is saying that the husband should be rewarded at the expense of the wife for his successful preservation of the community property, one-half of which he owned. And that the wife should be punished by taking away her vested interest which she had worked for 15 years as a partner of her husband to accumulate.

By A.R.S. § 25–318A,* the Legislature directed:

"On entering a judgment of divorce the court shall order such division of the property of the parties as to the court seems just and right * * *."

and then, immediately following this language, added:

"according to the rights of each of the parties * * *."

Obviously these latter words must have some meaning. They can only mean the rights which the parties had at the time the divorce was sought.

■ This Court has construed the statute to place the division of the community property within the sound discretion of the court. *See e. g., Nace v. Nace,* 104 Ariz. 20, 448 P.2d 76 (1968). That sound discretion means the apportionment of the community estate upon dissolution must be substantially equal. *Britz v. Britz,* 95 Ariz. 247, 389 P.2d 123 (1964); *Honig v. Honig,* 77 Ariz. 247, 269 P.2d 737 (1954). In the absence of sound reason, each spouse must receive substantial equivalents.

"Under our law, community property belongs equally to both husband and wife, and when it is divided between the parties in consequence of divorce proceedings, while it is true that the court has wide discretion as to what portion shall be awarded to each party, nevertheless in the absence of some reason requiring a contrary action, the presumption is that the parts received by each spouse should

be substantially equivalent." *Schwartz v. Durham,* 52 Ariz. 256 at 265, 80 P.2d 453 at 456 (1938).

Property may not be distributed in order to reward one party or punish the other.

"On entering a decree of divorce the court shall in such decree order such division of the property of the parties as to the court shall seem just and right, according to the rights of the parties and children, without requiring either party to divest himself or herself of the title to separate property. Sec. 27–805, A.C.A.1939. The judgment of the court is to be exercised in accordance with the above statute and not to the end that one party be rewarded or that the other party be punished." *Porter v. Porter,* 67 Ariz. 273, 285, 195 P.2d 132, 140. (1948).

" * * * judicial discretion should not be so exercised as to reward one party and punish the other." *Britz v. Britz,* supra, 95 Ariz. at 249, 389 P.2d at 124.

And *see also, Reed v. Reed,* 82 Ariz. 168, 309 P.2d 790 (1957), and *Honig v. Honig, supra.*

In *Armer v. Armer,* 105 Ariz. 284, 463 P.2d 818 (1970), we held that a distribution of a greater share to the wife was neither unfair nor inequitable. Because the husband was guilty of cruel and inhumane treatment toward his wife, the wife's precarious state of health severely limited her earning power, the husband had a proclivity for extensive periods of unemployment, and the wife was awarded only one dollar per year for alimony, we upheld the lower court's judgment.

In *Britz v. Britz, supra,* we held that there was a disproportionate distribution which might under other circumstances have required modification by this Court. There, while both the husband and wife worked, the wife "paid all of their living expenses from her salary and provided the funds to acquire the property in dispute."

---

* The Arizona statute was taken from Texas. See Article 2980, Revised Civil Statutes Texas 1895.

There was also evidence to the effect that the husband "drank to excess, that he squandered his earnings for personal purposes and never accounted to" the wife for their use. The evidence further showed that there was a nominal $10 per month award of alimony to the wife, and that the state of her health was precarious, necessitating future medical expenses

In *Honig v. Honig, supra,* the court awarded substantially all the community property to the wife. Here, again, the wife's health was poor, she was awarded no alimony, and it was through her efforts while separated from her husband that an estate was acquired. In affirming the judgment awarding the major portion of the community property to the wife, we said:

"It is apparent that if it had not been for plaintiff's labors, and her frugality and business sense, there would have been little or no community property to be the subject of controversy in this litigation. We hold the trial court did not abuse its discretion in awarding to the plaintiff the 'lion's share' of the community property, and defendant got his just deserts. One cannot expect to reap in fields where he has never sown." *Honig v. Honig,* supra, 77 Ariz. at 251, 269 P.2d at 740.

The distinguishing aspects of each of these cases is that the wife was the aggrieved party, the acquistion of the community property was principally through the wife's efforts, and she did not receive alimony, justifying the assumption that the greater share was in lieu of alimony. In only one instance have we approved the award of a substantially greater share to the husband, *see Patterson v. Patterson,* 63 Ariz. 499, 163 P.2d 850 (1945), although cases can be found where the division was not precisely even.

We hold that the court's unequal property distribution was arbitrary, unreasonable and an unconstitutional deprivation of the appellant's vested property interest in the community. It is ordered that this matter is remanded to the Superior Court with directions that the community property be divided reasonably equally without an allowance of a greater interest for the husband's managerial capacity or as punishment for the wife's supposed shortcomings.

There are two further matters which we think need not be enlarged upon to any great extent.

On July 19, 1968, the court in an order directed the appellee to pay support for the minor children in the sum of $275 semimonthly on the 8th and 23rd days of each month. Thereafter, on March 6, 1969, the court affirmed its previous order of support. However, on the 14th of May 1970, the court entered an order nunc pro tunc amending its order of March 6, 1969, directing that the amount of child support be reduced from $275 semi-monthly to $275 per month, effective from the time of entry of the court's order of March 6, 1969. It is well established that support payments may not be retroactively decreased. *McClanahan v. Hawkins,* 90 Ariz. 139, 367 P. 2d 196 (1961); *Johnson v. Johnson,* 46 Ariz. 535, 52 P.2d 1162 (1935); *Adair v. Superior Court,* 44 Ariz. 139, 33 P.2d 995 (1934). Neither can the court's order be sustained on the basis that it corrected a clerical mistake under Rule 60(a), Rules of Civil Procedure, 16 A.R.S. There is no evidence whatsoever to establish that this was a clerical mistake arising from oversight, omission or error. The court below was wholly without jurisdiction to apply its order retroactively to March 6, 1969 and to refuse to enter judgment in Mrs. Hatch's favor for the sum of $3,875 for accrued and back due support.

We are further of the view that the failure of the court below to allow Mrs. Hatch court costs and reasonable attorney's fees was also an abuse of discretion. The defendant, Dwight Keith Hatch, had an income of $13,800 a year from his employment and was in possession of and managing the community property. Without an order from the Superior Court allowing adequate attorney's fees and costs to be charged as a minimum against the commun-

ity assets, it is impossible to insure that a wife will have the means to litigate divorce litigation. *Kingsbury v. Kingsbury,* 93 Ariz. 217, 379 P.2d 893 (1963).

It is ordered that the second supplemental judgment in the cause is set aside and the Superior Court enter a judgment consistent with the pronouncements of this decision.

GORDON, J., concurring.

HOLOHAN, J. (concurring).

I concur in the result.

HAYS, Justice (dissenting):

I concur with the majority opinion except for that portion which holds that the trial court's distribution of the community property was arbitrary, unreasonable and unconstitutional; nor would I characterize the distribution as whimsical. Obviously, in reading the same transcripts, we came to different conclusions. Our difference here is not as to the principles of law involved, but as to the application of the rather confusing facts to those principles.

The enactment in 1973 by the legislature of ARS § 25–318 puts to rest for the future the question of whether fault is to be considered in the distribution of the community property. The ambivalence of the courts in this area is reflected in opinions which quote the rule in *Porter v. Porter,* 67 Ariz. 273, 195 P.2d 132 (1948), and then proceed to discuss the transgressions of the offending party. *See Honig v. Honig,* 77 Ariz. 247, 269 P.2d 737 (1954); *Reed v. Reed,* 82 Ariz. 168, 309 P.2d 790 (1957); *Britz v. Britz,* 95 Ariz. 247, 389 P.2d 123 (1964). The majority opinion does this in the following words:

" . . . The record amply demonstrates that her husband was guilty of extreme cruelty in the use of physical violence upon her."

Here again I am at a variance with the majority as to what position the record supports.

My sole purpose in this dissent is to make it clear that we do not wish to substitute our assessment of the evidence for that of the trial judge. We will interfere in that assessment only when the abuse of discretion by the trial judge is abundantly clear. I do not find that to be the case here on the issue of the distribution of the community property.

CAMERON, Chief Justice (concurring in the dissent):

I concur in the dissent.