[Civil No. 3953. Filed June 20, 1938.]

[80 Pac. (2d) 453.]

ARTINA W. SCHWARTZ, Appellant, v. M. H. DURHAM, Appellee.

Mr. John M. Schwartz, of Los Angeles, California, for Appellant.

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellee.

LOCKWOOD, J.—This is an appeal by Artina W. Schwartz, hereinafter called appellant, from a judgment in favor of M. H. Durham, hereinafter called appellee. The facts essential to a determination of this case are not in serious dispute, and may be stated as follows:

Appellant and appellee were married on November 12, 1919, and up to November, 1931, were husband and wife. During their coverture they acquired certain community property, among it being a gasoline filling station in Tucson, Arizona, together with the various appurtenances thereto. In December, 1929, appellee entered into a contract with the Firestone Tire & Rubber Company of California, a corporation, hereinafter called the California company, whereby he agreed to purchase two hundred shares of stock in Firestone Service Stores of Phoenix, a corporation, hereinafter called the Arizona company, and in payment therefor gave to the California company a promissory note, a guaranty of certain accounts receivable, and various other things of value. Thereafter, and in 1931, appellant filed an action for divorce. Before it was heard, the parties made a certain agreement settling their community rights. Under this settlement appellant conveyed to appellee by a bill of sale the two hundred shares of stock in the Arizona company, and a small amount of furniture. Appellee agreed to pay to appellant thirty-five dollars per month until she remarried, and gave to her certain household

furniture, and they executed a written agreement which recited, among other things:

"Whereas prior to the filing of such action for divorce a settlement and division of all the community property has been made between said parties; . . .

"Now therefore, it is hereby agreed between the parties hereto that the terms of this agreement may be entered as a part of the divorce decree to be entered in said divorce action, and shall be final as to the amount of alimony to be paid by defendant to said plaintiff."

The evidence also shows that at the time this written agreement was executed appellant stated:

"Yes, the stock and the business are Milt's and I am leaving town and I don't want to hamper Milt; I want him to have it."

On November 10, 1931, a decree of divorce was rendered which recited the agreement of the parties above referred to in regard to alimony and a settlement and division of the community property, but adjudged as follows:

"It is ordered, adjudged and decreed, that the court, by virtue of the power and authority therein vested, and in pursuance of the statutes in such cases made and provided, does order, adjudge and decree that the bonds of matrimony existing between plaintiff, Mary A. Durham and said defendant, M. H. Durham, be dissolved, and the same are hereby dissolved accordingly and the parties freed from the obligations thereof.

"It is further ordered that the plaintiff's name be changed to Mary A. White, by which name she was known and called prior to entering into the marriage hereby dissolved.

"It is further ordered that the defendant, M. H. Durham, pay to the plaintiff, Mary A. Durham, for her support and maintenance the sum of Thirty-five Dollars ($35.00) per month, until such time as said plaintiff shall remarry."

At the time this decree was rendered, neither appellant nor appellee had the slightest idea that the community had any cause of action against the California company on account of the transaction in which the two hundred shares of stock above referred to were purchased.

Some six months later the California company brought suit against appellee on the note and guaranty above referred to. He took the matter to his attorneys, and it was suggested to him that he might have a cause of action against it for damages on account of fraud in the transaction out of which the execution of the note and the purchase and sale of the stock arose. In answering the complaint, therefore, he set up as a cross-complaint such a cause of action. Appellant then for the first time learned that such cause of action might exist. The trial court, after all the evidence was in, instructed a verdict in favor of the California company. The case was appealed to this court, and in *Durham* v. *Firestone Tire etc. Co.,* 47 Ariz. 280, 55 Pac. (2d) 648, we held that the court should have submitted the case to the jury on the issues raised by the complaint and the cross-complaint. Thereafter appellant took steps to notify appellee and his counsel that she claimed an interest in the cause of action set up in the cross-complaint, and tried to protect it in all reasonable manners. Some two months after our opinion was rendered in the case aforesaid, the California company settled the action by paying the sum of five thousand dollars, through a check made in favor of "Odin B. Dodd, attorney for M. H. Durham and Artina W. Schwartz," and secured a release from both appellant and appellee. Appellee's answer states this payment was made "by reason of the cross-complaint" in the action. The check was cashed by Dodd, upon his endorsement as attorney for both appellant and ap-

pellee. He first deducted from the proceeds the attorney's fee and costs of the action, and then, since appellant claimed half the balance, while appellee claimed it all, he paid to appellee the half which was not in dispute and paid the other half into court on an interpleader, reciting that both appellant and appellee claimed such money, and asked that they be required to litigate their claims among themselves. Both appellant and appellee answered, each claiming the money. The matter was tried by the court which rendered a judgment in favor of appellee, and this appeal was taken.

There are six assignments of error upon which appellant bases an equal number of propositions of law. Appellee objects to the assignments on the ground that they are insufficient. We have examined them, and, while it is possible they might have been more detailed in their language, we think they are sufficient to require a consideration of the appeal upon its merits.

■■ There is no dispute that the cause of action set up by appellee's cross-complaint in the action brought by the California company was, at the time the right of action accrued, the community property of appellant and appellee, and, such being the case, each was equally interested therein in the same manner and to the same extent as they were in any other community property. *La Tourette* v. *La Tourette,* 15 Ariz. 200, 137 Pac. 426, Ann. Cas. 1915B 70. It is also the undisputed law that whenever a divorce is granted, any community property which is not disposed of by the decree of divorce is held by the parties thereafter as tenants in common. *Williams* v. *Williams,* 29 Ariz. 538, 243 Pac. 402.

■■ The decree of divorce between appellant and appellee does not attempt in and of itself to dispose of

the community property of the parties, except by recital of and reference to the agreement entered into between them before the divorce was granted. Community rights may be settled in this manner between the spouses if the agreement is approved by the court, and when so approved, it is a part of the judgment and binding on the parties to the same extent as if the division set forth therein had been decreed by the court of its own volition. *Goodwin* v. *Goodwin,* 47 Ariz. 157, 54 Pac. (2d) 268. These general principles, of law are not disputed by either party.

The question before us then is, What was the effect of the agreement between the parties as to the ownership of the cause of action above referred to? It is shown conclusively by the evidence that at the time this agreement was entered into, neither appellant nor appellee had any idea that a cause of action of any nature existed against the California company. It is undisputed that the appellant specifically, in writing, conveyed to the appellee, as a part of their settlement of the community rights, the two hundred shares of stock in the Phoenix company, the sale of which by the California company to appellee gave rise to the cause of action which was settled by the California company by the payment of the money in controversy. It is also undisputed that at the time of the settlement the appellant intended that appellee should have the stock and all of the assets of his business in Tucson, so far as she knew them to exist, and so stated.

It is the position of the appellee that he is entitled to all of the proceeds of the settlement of the cause of action aforesaid, for two reasons, (a) because the assignment of the stock carried with it as a matter of law an assignment of the cause of action which arose out of the transaction in which he purchased the stock from the California company, and (b) because the

agreement of settlement by its terms conveyed to him such cause of action.

It is the contention of appellant that (a) the transfer of the stock as a matter of law did not transfer the cause of action in question, and (b) that the settlement of the community rights only transferred the community property which both of the parties knew to exist, and was not intended, nor thought by either of them, to include a transfer of assets which neither one knew nor believed to exist at the time. The trial court apparently based its judgment on the belief that the transfer of the stock carried with it the cause of action as a matter of law. Appellant, in support of her theory that it did not, cites to us the case of *Huston* v. *Ohio & Colo. S. & R. Co.*, 63 Colo. 152, 165 Pac. 251, and quotes quite fully from that case. The court therein laid down the following rule of law (page 252):

"The right of action growing out of fraud is usually a personal right to the extent that it does not pass with an assignment of the thing to which the right relates. *Worsham* v. *Brown*, 4 Ga. 284; *Mullinax* v. *Lowry,* 140 Mo. App. 42, 124 S. W. 572; *Steele* v. *Brazier,* 139 Mo. App. 319, 123 S. W. 477; *Fox* v. *Hirschfeld,* 157 App. Div. 364, 142 N. Y. Supp. 261; 5 Corpus Juris, 952, note 22 (e)," and with this statement we agree.

Appellee does not cite a single case in opposition to this general rule nor, indeed, does he attempt to question it seriously in his brief, but contends that appellant specifically assigned her interest in the cause of action by the settlement of community rights above referred to, quoting from *Huston* v. *Ohio & Colo. S. & R. Co., supra,* the following language:

" 'The cardinal rule to be applied is to ascertain the intention of the parties as to what interests, rights or property they intended to pass under the assignment, and to carry out such intention as nearly as may

be done without violence to the language used by them.' 5 C. J. 949.''

We think this is the correct test of the effect of the settlement.

The appeal then narrows itself to the question of the intention of the parties in regard to the conveyance of the cause of action when they made their settlement of community rights. It cannot be doubted that appellant in her agreement, both oral and written, intended to convey to appellee all of the assets of the community except those specifically given to her by such agreement, *in so far as she knew them to exist at the time.* It is equally beyond dispute that she had no knowledge nor intimation then that any cause of action against the California company existed. The question before us then may be stated in the following language: Does a property settlement between husband and wife in contemplation of divorce, which is all-inclusive in language, as a matter of law dispose of rights which neither party knew were in existence at the time of the settlement?

Divorce proceedings are considered as equitable actions, even under the code practice. *Wadsworth* v. *Wadsworth,* 81 Cal. 182, 22 Pac. 648, 15 Am. St. Rep. 38. Bills of interpleader of the character of the one involved in the present case are also equitable in their nature. *Shaw* v. *Coster,* 8 Paige (N. Y.), 339, 35 Am. Dec. 711. When, therefore, in a proceeding of this nature we consider a contract between husband and wife settling their property rights, which is valid and binding only because it is made a part of a decree of divorce, we think it is obvious that its construction and operation are to be governed by the principles of equity. A settlement of property rights made by a husband and wife in contemplation of divorce stands on a very different footing from an ordinary contract

of purchase and sale made between strangers dealing at arm's length. Under our law, community property belongs equally to both husband and wife, and when it is divided between the parties in consequence of divorce proceedings, while it is true that the court has wide discretion as to what portion shall be awarded to each party, nevertheless in the absence of some reason requiring a contrary action, the presumption is that the parts received by each spouse should be substantially equivalent. With this standard in mind, either party who urges a construction of a separation agreement, which results in a great inequality of division between the parties, must bear the burden of showing affirmatively, and by a preponderance of the evidence, that such inequality was really intended and agreed to by both of the spouses.

In the present case, while the agreement of settlement was in such broad, general terms that as between strangers in the sale of a property for a valuable consideration, it might be held to convey not only the stock of the Arizona company, but also the right of action against the California company arising out of the original sale of the stock, the result of such a construction would be to cause a most disproportionate and inequitable division of the assets of the community. As we have stated, the evidence shows clearly that neither of the parties had any knowledge at the time of the agreement that they had any right of action against the California company. The rule governing a situation of this kind is stated in Story's Equity Jurisprudence, Fourteenth Edition, paragraph 217, in the following language:

"Release of one's property in ignorance as to ownership. It is upon the same ground that a Court of Equity proceeds where an instrument is so general in its terms as to release the rights of the party to property to which he was wholly ignorant that he had

any title, and which was not within the contemplation of the bargain at the time when it was made. In such cases the court restrains the instrument to the purposes of the bargain, and confines the release to the right intended to be released or extinguished.''

We think the rule thus laid down is in harmony with all of the principles of equity which apply to a situation of this kind, and we hold, therefore, that the agreement of separation did not transfer to appellee appellant's interest in the cause of action against the California company.

But, says appellee, this court has held in the case of *Berman* v. *Thomas,* 41 Ariz. 457, 19 Pac. (2d) 685, that a separate action may not be maintained to set aside a property settlement embodied in a divorce decree which has become final, for the reason that it would be a collateral attack upon the judgment, and he insists that the present action is such a collateral attack. We reaffirm the rule laid down in *Berman* v. *Thomas, supra,* but we think it does not apply to the present case. In the case cited the wife attempted to set aside a settlement. In the present case she insists on maintaining the settlement made by the divorce decree, but claims that a proper construction of such settlement shows that it did not include the cause of action against the California company, and that therefore the effect of the decree was to make her a tenant in common with appellee in such cause of action.

It is also contended that appellant is estopped from asserting her rights. In view of the testimony on the part of appellee himself, we are satisfied that the essential elements of an estoppel do not appear in the case.

We have considered the other matters presented by counsel, but think it unnecessary to discuss them in this opinion.

The judgment of the superior court of Pima county is reversed, and the case remanded with instructions to enter judgment in favor of appellant, in accordance with the principles expressed herein.

McALISTER, C. J., and ROSS, J., concur.