452 P.2d 709

**Harold S. FINCK, Appellant,**

v.

**Renee M. FINCK, Appellee.**

**No. 2 CA–CIV 609.**

Court of Appeals of Arizona.

April 8, 1969.

Rehearing Denied May 7, 1969.

Review Denied June 17, 1969.

James F. Haythornewhite, Nogales, for appellant.

Karam & Martin, by Nasib Karam, Nogales, for appellee.

MOLLOY, Chief Judge.

This appeal questions the righteousness of a division of community property made in a divorce action. The only contention made on appeal by the husband is that he should have been awarded one half of the stock owned by this community in a closely held corporation controlled by the wife's family.

The parties were married in January of 1949 and divorced in June of 1968. Custody of three minor children, of the ages of 14, 9 and 8 years, respectively, was awarded to the wife subject to visitation rights in the husband. The husband was ordered to pay $400 per month as alimony to the wife and support for the children and the additional sum of $95 per month mortgage payments on the home until the outstanding mortgage in the approximate sum of $2,600 is fully paid. The husband does not complain of these portions of the decree.

In its division of the community property, the wife was awarded the home with an estimated value of $30,000, the household furnishings therein of an estimated value of $6,000, an automobile with the value of $1,650, and 125 shares of stock in Marcus Mercantile Corporation, a family corporation, controlled by the wife's relatives. The value of this stock presented the principal factual contention during the trial.

As opposed to what the wife received, the husband was awarded miscellaneous stock having a value of $8,696.35, bank deposits totaling $8,621.05, and life insurance policies having a cash surrender value of $7,450. Of the bank deposits, $3,716.26 were on deposit as the husband's separate property in two of these bank accounts at the time of the marriage.

Without taking the 125 shares of stock in Marcus Mercantile into account, the wife received total assets of $37,650 and the husband received assets of $25,767.40, including his premarital contribution to the bank accounts.

Both in the trial court and here it has been assumed that the 125 shares of stock which are in dispute are community property of the parties. This stock was given to the husband and wife by the wife's father during the marriage. We believe there is an unresolved question in this jurisdiction as to whether property acquired by the husband and wife during marriage by gift is, or can be, community property. See A.R.S. § 25-211, subsec. A and § 25-213, subsec. A.[1] However, for the purposes of this action we accept the mutual position of the parties—that is, the stock will be regarded as community property. DeMarce v. DeMarce, 101 Ariz. 369, 419 P.2d 726 (1966).

There has been a motion to dismiss the husband's appeal on the ground that he had accepted the benefits of the divorce decree.

The affidavit of the wife, attached to the motion, and a transcript of a contempt hearing held in the trial court,[2] establish that the husband had taken into his possession the miscellaneous stock certificates, the passbooks for the bank accounts and the life insurance policies, all of which had been deposited with the clerk of the court during the litigation, and had expended some of the funds from the bank accounts and had borrowed money on the life insurance policies. The affidavit of the husband, in response to the motion, is to the effect that all of the moneys expended from the bank accounts and borrowed on the life insurance policies ($3,000) had been expended to pay attorneys' fees and costs of the wife in the total sum of $2,261,[3] to pay community obligations incurred by the wife during the pendency of the divorce action and to pay the balance of the mortgage on the home in the approximate sum of $2,600. There is no controverting affidavit as to the purposes for the expenditure of these funds. In his affidavit, the husband stated that he continued to hold all of the stock certificates in the same registered ownership as at the time of the divorce decree, that some of said certificates were registered in the wife's name alone, and that he held the passbooks with the same balances as at the time of the decree, with the exception of the expenditures previously described. The husband has posted a supersedeas bond in the sum of $5,000, which has as its condition that the husband will

1. Similar statutes have been interpreted both as classifying gifts to the husband and wife during the marriage to be community property, see In re Salvini's Estate, 65 Wash.2d 442, 397 P.2d 811 (1964), and as separate, joint estate, see Ramsower v. Pieper, 114 S.W.2d 1188 (Tex.Civ.App.1938), and Stockstill v. Bart, 47 F. 231 (D.Wash.1891). The latter result is accepted by McKay, Community Property, 2d ed., § 260, at 189, and Ballinger, Community Property § 57, at 92, but is criticized by Professor de Funiak, 1 de Funiak, Principles of Community Property § 69, at 173, n. 17.

2. The husband caused the wife to be cited for contempt for failing to deliver over to him the personal property which had been set over to him by the divorce decree. The wife reciprocated by causing the husband to be cited for contempt for failing to pay monthly support, $800 attorneys' fees for her lawyers, and bills incurred by the wife during the divorce action. Neither was found in contempt by the trial court.

3. At the time of the divorce decree the husband was ordered to pay attorneys' fees to the wife's counsel in the sum of $800. After an appeal was filed the husband was ordered to pay $1,000 for the wife's attorneys' fees on appeal, and $150 for her costs on appeal. These orders, together with those made during the pendency of the action, total $2,261.

perform any judgment or decree rendered on appeal.

The record is clear that the husband had been discharged from his employment with the family corporations and that, at the time of trial, he was unemployed. There seems no question but what the husband's treatment of the assets awarded to him by the divorce decree was necessary in order to meet the obligations placed upon him by his marital contract and the decree terminating this contract.

■ Generally, the party accepting some benefit under a judgment cannot appeal from that judgment. 5 C.J.S. Appeal & Error § 1354(6) b, at pp. 426–428; 4 Am. Jur.2d Appeal and Error § 250, at 745–746; Annot., 169 A.L.R. 985 et seq., and see Reed v. Reed, 82 Ariz. 168, 309 P.2d 790 (1957). It has been said that the only exception to this general rule is that presented in a case in which there are several independent issues, a review is sought on appeal as to one of these issues while the acceptance of benefits is as to a separate issue, and there is no question but that the appellant had at least as much coming to him as was accepted. In re Black's Estate, 32 Mont. 51, 79 P. 554 (1905). The editor of the above-cited A.L.R. annotation suggests that there are a greater variety of exceptions than laid down by this early Montana authority and that these exceptions may all be recognized if the rule of waiver is stated thus:

"A party who accepts an award or legal advantage under an order, judgment, or decree, waives his right to any such review of the adjudication as *may* again put in issue his right to the benefit which he has accepted." (Emphasis added) 169 A.L.R. at 988.

■ While the husband's appeal singles out the division of the family corporation stock for attack, we cannot say that this appeal "may" not put in issue again the entire division made. The appeal notice is as to all portions of the judgment dividing the property. While an appellate court has jurisdiction in this state to reapportion without new trial, see Spector v. Spector, 94 Ariz. 175, 382 P.2d 659 (1963), Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966 (1963), the appellate court may also direct a new trial on this issue. See Collier v. Collier, 73 Ariz. 405, 242 P. 2d 537 (1952), and Ackel v. Ackel, 57 Ariz. 14, 110 P.2d 238, 133 A.L.R. 549 (1941).

In *Reed, supra,* our Supreme Court recognized the waiver rule in a divorce action but held that a husband was not precluded from questioning the property division portions of a decree by the fact that he has taken advantage of the divorce by a remarriage. The court, in so holding, recognized the separable issue exception:

"However, it has been also held that where a judgment contains separate provisions which are in their nature divisible, the acceptance of the benefits of a divisible part is not inconsistent with the prosecution of an appeal from the remainder. This is true even where the notice of appeal is from the whole of the judgment."

82 Ariz. at 169–170, 309 P.2d 791.

*Reed* appears to be in accord with a substantial body of law holding that the general principle of waiver applies in divorce cases. See 4 Am.Jur.2d Appeal and Error § 259, at 754–755; 27B C.J.S. Divorce § 299(7), at pp. 338–339; and 169 A.L.R. at 999–1003. The doctrine has even been applied to preclude a wife from asking for a new trial in a divorce action because she has accepted alimony and attorney's fees. Storke v. Storke, 132 Cal. 349, 64 P. 578 (1901).

It is our view that the doctrine under discussion must be treated as an equitable one, falling under the general category of judicial estoppel. If it is thus correctly categorized, we do not believe that any hard and fast rule is appropriate. See 28 Am. Jur.2d Estoppel and Waiver §§ 68–72 inclusive, at 694–704, and concurring opinion in Otis Elevator Company v. Valley Na-

tional Bank, 8 Ariz.App. 497, 447 P.2d 879, 882 (1968).

By its very nature, a divorce action, insofar as the subject at hand is concerned, is in a somewhat different category from most civil litigation. Whatever the division that is made of the community property and whatever alimony is awarded, the court is dealing with rights which arise out of the marriage and the prevailing party will usually only be acquiring property rights which to some degree were already owned. Until the divorce is rendered, most of the property interests of the husband and wife are held in amalgamated form and the separate rights of the parties are inchoate until there is a judicial act of severance which pulls out of the amalgam the separate rights that are to control in the future. Usually neither party gains by the divorce decree; almost invariably there is a net loss to the amalgam of rights because of the costs of litigation.

■ Taking the post-divorce conduct of the husband as a whole, we do not believe that it would be equitable to preclude him from questioning this decree in the limited way that is attempted here. As we have pointed out, the decree, even without considering this Marcus Mercantile stock, considerably favors the wife, and there seems little probability that the husband will be awarded any less on appeal, whether or not a new trial were to be ordered. As we have noted, there is a supersedeas bond to protect, in some degree, the wife's interests. There is no cross appeal. That which the husband has done with the property awarded to him has been economically unavoidable under the circumstances, even to the point that he might have been punished for contempt if he had not used at least some of these funds for the purposes for paying the wife's alimony, and support payments and her attorneys' fees and costs. He has not, so far as the record reveals, used any of the property awarded to him for improper purposes. In our view, the motion to dismiss should be, and is, denied.

As to the division of the Marcus Mercantile stock, we have come to the conclusion that there is no just cause to divide it other than equally between the husband and wife. We recognize that the trial court has broad discretion vested in it by the pertinent statute, A.R.S. § 25–318, subsec. A, as amended, to divide the community property. Most of the cases on review coming to our attention have affirmed the division made in the trial court. Among the recent cases so holding are Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1968); DeMarce v. DeMarce, 101 Ariz. 369, 419 P.2d 726 (1966); Britz v. Britz, 95 Ariz. 247, 389 P.2d 123 (1964); and Hanner v. Hanner, 95 Ariz. 191, 388 P.2d 239 (1964).

Further, we recognize that the trial court, in making this disparate division, had the right to consider that the divorce was being granted to the wife for cruel treatment, that she was to have the custody of the three minor children of the parties, and that a substantial portion of the assets distributed to her was a home which would presumably provide a place of abode for these three children. We further conceive that, even though there is no case called to our attention so holding, it may have been proper for the trial court to have considered that this particular stock was a gift from the wife's father to the community. The statutory test—"* * * such division of the property of the parties as to the court seems just and right, according to the rights of each of the parties and their children * * *"—A.R.S. § 25–318, subsec. A, is broad enough so that a consideration of the source of a gift to the community is not ruled out.

However, with all of this, it is our conclusion that the decree here will lack basic fairness unless this decree is modified to the extent of giving each of these marital partners an equal share in this stock. While more disproportionate divisions have been affirmed on appeal, *see, e. g.,* Honig v. Honig, 77 Ariz. 247, 269 P.2d 737 (1954), we believe that, in every case where there has been an approval of a division as disparate as that made here, there has been

clear evidence of a flagrant violation of traditional marital duties by either husband or wife or of other circumstances strongly recommending an unequal division which are absent here.

In Schwartz v. Durham, 52 Ariz. 256, 80 P.2d 453 (1938), our Supreme Court said:

"Under our law, community property belongs equally to both husband and wife, and when it is divided between the parties in consequence of divorce proceedings, while it is true that the court has wide discretion as to what portion shall be awarded to each party, *nevertheless in the absence of some reason requiring a contrary action, the presumption is that the parts received by each spouse should be substantially equivalent.*" (Emphasis added) 52 Ariz. at 265, 80 P.2d 456.

This general statement was reaffirmed in Reed v. Reed, *supra,* 82 Ariz. at 171, 309 P.2d 790. In one of its latest decisions in this area of our law, our Supreme Court, in affirming the trial court's division of community property, was careful to point out that the division made was substantially equal. Nace v. Nace, 104 Ariz. 20, 448 P.2d at 80–81.

In *Reed,* the court affirmed an award of approximately twice as much to the wife as was granted to the husband. Here, if we subtract (1) the separate contribution of the husband to the bank accounts, (2) the community debts which he was ordered to pay, (3) the attorney's fees incurred by himself, (4) those he was ordered to pay for his wife, and (5) the mortgage on the home which he was ordered to pay, the wife received considerably more than twice as much in community assets as the husband without taking into account the Marcus Mercantile stock.

In *Reed,* the court adverted to the husband's " * * * intolerable conduct with another woman * * * " (82 Ariz.

at 171, 309 P.2d 790), and pointed out that the amount awarded for the support of the children was in a " * * * minimum amount * * * " Conversely, here we have no outrageous conduct on the part of the husband. There is no evidence that he ever dissipated community assets or that he had been otherwise than a diligent worker in the community's behalf. The grounds for divorce advanced by the wife do not contain any allegations of physical abuse or infidelity. All charges relate to having criticized the wife's family, to having been "stingy," to having been unaffectionate and to having embarrassed the wife in public by caustic remarks. His conduct towards his wife, as detailed by the wife, reached its nadir in failing to build a family room onto the home,[4] in saying to friends in her presence that she had entered her "second childhood" by riding a bicycle, and in refusing to buy champagne at a party. Accusation that the husband was penurious is met, in part at least, by the undisputed fact that the wife has been provided, for a number of years, with a full-time maid, a gardner, and, in the last months of this marriage, a half-time maid as well. The income of the community hardly justifies as much.[5] In view of the then-existing condition of the husband, that is, when he was unemployed and only had prospects of future employment, we regard the amount awarded for support to be more than "minimum." Nor do we see in this record any substantial evidence that the husband will not faithfully pay the amounts awarded for support, as was the case in *Reed* (*see* 82 Ariz. at 172, 309 P.2d 790).

In *Honig, supra,* the wife received an even more generous share of the community property, but the circumstances justifying the disparity were considerably more exigent. In *Honig,* the property had been acquired entirely through the efforts of the wife, and the court noted that the husband had " * * * shamefully disre-

4. After considerable importuning of the husband, the wife had this room constructed without her husband's permission in the year prior to this divorce action.

5. The husband's average earnings over the last ten years of the marriage were between $12,000 to $13,000 annually.

garded his marital duties." (77 Ariz. at 251, 269 P.2d 737.)

As we have noted, this stock was a gift from the wife's father, but the nature of the gift is significant. This husband had been working in this family corporation for approximately fifteen years, most of it in a managerial capacity. We believe it fair to assume that, in the absence of evidence to the contrary, his efforts on the part of the corporation were spurred to some degree by his part ownership. The evidence indicates that during the last five years of the marriage, undistributed profits, after taxes, were accumulated in this corporation in amounts varying from $7,355.34 (in the fiscal year terminating in February 1964), to $35,632 (in the fiscal year terminating February 1968). During the period from February of 1962 to February of 1968, the net worth of this corporation, resulting from the accumulation of undistributed profits, had increased from $189,372.82 to $344,366.

The evidence as to the value of this stock varied radically. Two certified public accountants testified during this action, one for the plaintiff and one for the defendant. The husband's witness estimated that the value of these shares was $1,242 per share, which would make a total community value of $155,250. The wife's witness, the accountant for this corporation, testified that the book value was $529 per share or $66,125 for 125 shares, and variably expressed the opinion that this stock " * * * would practically be of no value to a non-operator * * *," was of " * * * no value or very, very little value * *," that he would value the stock at book value as a "low point," that he would value the stock for estate tax purposes at its book value, and that for estate tax purposes he would appraise it at its book value less a discount of between 25 and 50 per cent.

While, as an appellate court, we are in no position to hold that any value placed by the trial court on this stock between the outer limits set by this evidence is erroneous, Tucson Utility Supplies, Inc. v. Fred J. Gallagher Const. Co., 102 Ariz. 499, 433 P.2d 629 (1967), we believe in the peculiar circumstances here, basic justice will be denied if the husband is deprived of all interest in this stock and he is required to commence a new career with very little in the way of assets.

Judgment rendered below is modified so as to provide that the defendant is to receive as his sole and separate property one half of the 125 shares of Marcus Mercantile Corporation stock; and, except as modified, the judgment rendered below is affirmed.

KRUCKER, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.