893 P.2d 11

**In re the Marriage of Chris MARTIN, Petitioner–Appellant,**

**v.**

**Charles Richard MARTIN, Respondent–Appellee.**

**No. 1 CA–CV 92–0195.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 6, 1994.

Review Denied April 25, 1995.

Grant Woods, Atty. Gen. by Lisa M. Aubuchon, Asst. Atty. Gen., Phoenix, for petitioner-appellant.

Barton L. Baker, Yuma, for respondent-appellee.

## OPINION

NOYES, Judge.

The issue is whether a judgment for child support arrearages is void if it fails to include automatic child support increases as provided for in the parties' decree of dissolution. We hold that such a judgment is voidable, but not void. We also hold that the trial court did not abuse its discretion in refusing to set the judgment aside when the motion to do so was not filed until fourteen months after entry of the judgment and the court was given no reason to explain the long delay.

### Facts and Procedural History

In June 1981, the twenty-year marriage of Chris ("mother") and Charles Richard Martin ("father") was dissolved. There were nine children of the marriage, ranging in ages from 3 to 17 years. One of the terms of the parties' property settlement agreement was that father was to pay mother $250.00 per week for child support. The agreement also provided that child support would be "increased annually in an amount equal to the percentage increase in the Consumer Price Index [ ("CPI") ] during the preceding year." The property settlement agreement was incorporated into the decree of dissolution.

After the dissolution, father made minimal child support payments, and his arrearage grew larger each year. In 1990, mother went to the Expedited Support Enforcement Unit (the "ESEU") of the Clerk of the Superior Court in Maricopa County and completed the necessary paperwork to get her case involved in one of the child support "roundups" she had heard about in the media.[1] As

---

1. Although the record is not precise on this point, we presume that the ESEU was created

a prerequisite to involving the clerk's office, mother withdrew from the State IV–D assistance program from which she was receiving benefits.[2] In August 1990, the trial court issued a form minute entry stating that the court had been notified by the clerk of the court that father was delinquent in payment of child support and ordering that father and mother appear at the ESEU offices for an "Expedited Support Enforcement Conference" on September 5, 1990.

At the conference, mother presented her records of payments received and her calculations of support still owed, and father presented his calculations of payments made. Mother told the ESEU officer that her calculations did not include the CPI increase provided by the original support order. The officer told mother that the ESEU was "not equipped" to do the CPI calculation and that the matter would have to be dealt with at a later date. The officer also told father that if he wanted to modify the original support order, he would have to file a request to modify.

On October 15, 1990, the ESEU issued a "Report, Recommendation and Order re: Child Support" ("the report"). The report, which did not mention the CPI-increase provision, stated:

Pursuant to a Decree of Dissolution of Marriage signed by this Court on the 16th day of June, 1987 [sic], Obligor [father] has been ordered to pay $250.00 per week for a total of $1,086.25 per month for child support beginning the 13th day of April, 1981.

Based on the records of the Clerk of the Court and Obligee's [mother's] Affidavit of Direct Payments, this Support Enforcement Officer has calculated arrearages in this case to be $84,220.32 for the period April 13, 1981 through August 31, 1990....

The report represented that both mother and father agreed with the clerk's office payment record and with "the Arrearage Calculation Worksheet establishing arrearages in the

amount of $84,220.32." Among the ESEU recommendations were the following:

Obligor shall continue to make monthly child support payments of $1,086.25 in accordance with Court's Order dated the 16th day of June, 1987 [sic]. Based on the Clerk of the Court's records and Obligee's Affidavit of Direct Payments, Obligor owes as an arrearage the sum of $84,220.32 from April 13, 1981 through August 31, 1990. Obligor shall pay a minimum of $500.00 per month on the arrearage on or before the 15th day of every month beginning the 15th day of October, 1990, until paid in full or until further order of the court.

Obligee shall have Judgment against Obligor in the amount of $84,220.32, plus interest at the legal rate from the date of each installment due, for the arrearage for the period of April 13, 1981 through August 31, 1990.

Obligor's wages are hereby assigned in the amount of $1,586.25 which constitutes $1,086.25 for current [support] as ordered above and $500.00 towards the arrears against Obligor's present employer or payor, and future employers or payors upon proper notice.

The report also stated: "Obligor and Obligee are advised to follow appropriate procedures and consider seeking legal counsel if seeking to modify the Court's existing Order for support."

On October 24, 1990, the trial court signed a formal written order adopting and approving the ESEU report and recommendations as an "interim order." The interim order, together with the ESEU report and recommendations, was sent to the parties and expressly informed them that the report and recommendations would automatically become a final order unless an objection was filed within fifteen days of the date the order was signed by the court. No objection was filed, and the order therefore became final in

and exists pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–298(A) (Supp.1993), which requires the presiding judge of the superior court in each county to appoint "family law referees or court commissioners ... to provide for the expe-

ditious establishment and enforcement of support orders."

2. Title IV–D of the Social Security Act, 42 U.S.C. § 651 and A.R.S. § 41–1954(A)(1)(c).

November 1990. We refer to it hereinafter as the "judgment."

In December 1990, mother called the clerk's office to find out when father would be in a round-up. She was told that, because some support payments had been collected from father, the case was not eligible for the round-up program. Mother then reapplied for State IV–D financial assistance. Sometime later—apparently in about December 1991—an employee with the State did the appropriate calculations and concluded that the failure of the arrearage judgment to account for the CPI-increase-factor meant that it was $45,560.86 less than it should have been according to the terms of the original decree. The State also calculated that, if the CPI increase was factored in to the child support order, an additional $13,172.51 in arrearages and interest had accrued between October 1990 and December 1991.

In January 1992, the State of Arizona, acting pursuant to A.R.S. section 12–2456,[3] filed on mother's behalf a motion to set aside the arrearage judgment. At about the same time, mother and father also stipulated to a modification of father's current child support obligation. Because this modification agreement became effective January 1, 1992, and eliminated the CPI factor, December, 1991 is the last month in which the CPI is an issue in the case. By the State's calculations, the CPI-factor would have increased father's child support obligation each year; and $1,086.25 per month in 1981 would have become $1,722.42 per month in 1991.

The State argued that the arrearage judgment was void and should be set aside pursuant to Rule 60(c)(4), Arizona Rules of Civil Procedure ("Rule") because: (1) the judgment retroactively modified the original support order, and (2) mother was not given adequate notice that the court was considering retroactive or prospective modification of

the original support order. The State further contended that the "errors or omissions of the clerk's office and [the trial] court" constituted "extraordinary circumstances of injustice" justifying relief under Rule 60(c)(6).

In response, father argued that the court did not modify the amount of child support owed, "[t]he court merely reduced to judgment the amounts proven to be unpaid" based upon the evidence mother presented or failed to present. Thus, father argues that the order was merely erroneous and not void and, therefore, the State's only recourse was a timely application for relief under Rule 60(c)(1), which was not made. On February 12, 1992, the trial court denied the State's motion. The State timely appealed. We have jurisdiction pursuant to A.R.S. sections 12–120.21(A)(1) (1992) and 12–2101(C) (1994).

## Analysis

### Relief Under Rule 60(c)(4)

■ Rule 60(c)(4) permits a court to relieve a party from a final judgment or order when "the judgment is void." The State argues that the judgment must be set aside because it was entered without proper notice and jurisdiction and, therefore, is void. If a judgment or order is void, the trial court has no discretion but to vacate it. *Springfield Credit Union v. Johnson,* 123 Ariz. 319, 323 n. 5, 599 P.2d 772, 776 n. 5 (1979); *In re Maricopa County Juvenile Action No. JS–5860,* 169 Ariz. 288, 292, 818 P.2d 723, 727 (App.1991). There is no time limit in which a motion under Rule 60(c)(4) may be brought; the court must vacate a void judgment or order "even if the party seeking relief delayed unreasonably." *Brooks v. Consolidated Freightways,* 173 Ariz. 66, 71, 839 P.2d 1111, 1116 (App.1992); *accord In re Milliman's Estate,* 101 Ariz. 54, 58, 415 P.2d 877,

3. A.R.S. § 12–2456 (1994) provides, in relevant part:

A. The attorney general or county attorney on behalf of this state may initiate an action or intervene in an action to establish, modify or enforce a duty of child support, including medical support, regardless of the welfare or non-welfare status of the person to whom the duty of support is owed. The attorney general or

county attorney may establish, modify or enforce such a duty of support by all means available, including all civil and criminal remedies provided by law.

B. This state may initiate an action or may intervene in an action involving child support. Intervention by the state in an existing action is by unconditional right and is accomplished by the state filing an entry of appearance.

881 (1966). A judgment or order is "void" if the court entering it lacked jurisdiction: (1) over the subject matter, (2) over the person involved, or (3) to render the particular judgment or order entered. *See Matter of Adoption of Hadtrath*, 121 Ariz. 606, 608, 592 P.2d 1262, 1264 (1979).

■ Relying upon *Lamb v. Superior Ct.*, 127 Ariz. 400, 621 P.2d 906 (1980), *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976), and A.R.S. § 12–2453(C) (1994)[4], the State argues that the judgment is void because the trial court lacked jurisdiction to enter an order retroactively modifying the original support order. We do not read the judgment as a retroactive modification of the original support order. This is not a case, like *Hatch*, where the trial court entered an order *nunc pro tunc* amending a prior support order. *See Hatch*, 113 Ariz. at 134, 547 P.2d at 1048. In this case, the trial court plainly intended no modification of the prior child support order; to the contrary, the ESEU's report recommended that father "*continue* to make monthly child support payments ... *in accordance with* [the] Court's Order dated the 16th day of June, 1987 [sic]." (Emphasis added.) Moreover, the report expressly advised the parties "to follow appropriate court procedures and consider seeking legal counsel if seeking to modify the Court's existing Order for support," and it noted that father had indicated he would be "filing for modification." Thus, the purpose of the ESEU report, which was adopted in full by the court, was not to modify past-due child support; it was to determine the amount of past-due child support and to grant mother judgment in that amount.

The amount of arrearages was a fact question that was complicated by the CPI-increase factor in the original decree. But this complication was never presented to the trial court. In making its determination of the amount of arrearages owed, the court relied upon the ESEU's report and recommendations, which in turn was based upon evidence submitted by the parties and on the parties' representations that they agreed with the ESEU calculations contained in the report. The State concedes that neither party provided the ESEU with evidence regarding the CPI computations. The ESEU report states, in part, that "Obligee [mother] agrees with ... the Arrearage. Calculation Worksheet establishing arrearages in the amount of $84,220.32." It was an error for the ESEU report writers to ignore the CPI-increase factor, but that error was announced to the parties, and it was accepted without objection by the parties. All indications to the trial court from the ESEU report were that the numbers recommended by the report were correct and agreed to by both parties.

Thus, the fact that the judgment incorporated the ESEU's omission of annual CPI increases did not divest the court of jurisdiction to enter the judgment. That the arrearage judgment was erroneous regarding its calculations of past-due child support meant that it could and should have been set aside if timely application for relief was made, but the judgment was not void. *See Cockerham v. Zikratch*, 127 Ariz. 230, 234, 619 P.2d 739, .743 (1980) (distinguishing between erroneous judgments and void judgments).

■ Because the State's complaint, in essence, is that the judgment is based on calculation errors, the applicable rule is Rule 60(c)(1), which permits a trial court to grant relief from a final judgment or order upon a finding of "mistake, inadvertence, surprise or excusable neglect." A Rule 60(c)(1) motion, however, must be filed "not more than six months after the judgment or order was entered." Ariz.R.Civ.P. 60(c). In this case, the State's motion to set aside the judgment was not filed until January 1992, fourteen months after entry of the judgment in No-

---

4. A.R.S. § 12–2453(C) (1994) provides, in relevant part:

Any order for child support may be modified or revoked upon a showing of changed circumstances which is substantial and continuing, *except as to any amount that may have accrued as an arrearage prior to the date of the filing of* *the notice of the motion or order to show cause to modify or revoke.* The order of modification or revocation may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or to revoke or to any date subsequent to such filing. (Emphasis added.)

**16**

vember 1990. Because the motion was untimely, the court had no jurisdiction to grant relief under Rule 60(c)(1).

### Relief Under Rule 60(c)(6)

The State contends that the arrearage judgment should be set aside pursuant to Rule 60(c)(6), which permits a final judgment or order to be set aside for "any ... reason justifying relief from the operation of the judgment." A motion for relief brought pursuant to Rule 60(c)(6) must be filed "within a reasonable time." Ariz.R.Civ.P. 60(c). Absent an abuse of discretion, we will not disturb a trial court's decision on a motion to set aside a judgment. *See Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 633, 688 P.2d 637, 641 (1984).

In denying the State's motion to set aside, the trial court observed:

> In this case, the motion should have been filed within a reasonable time from the latest the State or [mother] reasonably should have realized there was an error in the judgment which would remain uncorrected in the absence of a Rule 60(c) motion. But since the motion does not address the issue of the latest time by when that realization reasonably should have occurred, there is no way for the court to determine whether the motion was filed within a reasonable time from that time. The record therefore does not appear to justify the granting of the motion.

The record supports the trial court's observations, and the State has not argued that the motion was brought within a reasonable time. We find no abuse of discretion in the court's refusal to set aside the judgment pursuant to Rule 60(c)(6).

### The Judgment Did Not Modify Future Child Support

The State argues that the judgment could not have modified future child support, and we agree. The time period at issue here regarding future child support is between November 1990, when the judgment was entered, and January 1992, when the parties' new child support order went into effect. The State argues that due process prohibits the modification of an order when a party is not given adequate notice that the order could be modified. We agree that "[d]ue process requires that a party be given notice and an opportunity to be heard ...", *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 544, 647 P.2d 1127, 1142, *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982), and that there was no notice that the proceeding that led up to the arrearage judgment could result in a modification of future child support. Nonetheless, there is a more basic reason we conclude that the judgment cannot be construed as a modification of future child support: By its plain language, the judgment does not modify future child support. The judgment expressly ordered father to *continue* making monthly child support payments *in accordance with* the original support order. Any party seeking to have the original support order modified was advised "to follow appropriate court procedures."

Because the arrearage judgment does not modify the original support order, mother is not precluded from seeking an arrearage judgment for the child support that is due and unpaid for the period from November 1990 to January 1992. Although the State has given us its calculations of the arrearage owing for that period, that issue was not a contested one in the trial court or on appeal. Father should be given the opportunity to do his own calculations regarding this arrearage, in accordance with the provisions of the original decree.

### Conclusion

The judgment of the trial court is affirmed.

JACOBSON, P.J., and FIDEL, J., concur.