7 P.3d 144

**In re the Marriage of Christine MARTIN, Petitioner–Appellee, Cross Appellant,**

v.

**Charles MARTIN, Respondent–Appellant, Cross Appellee.**

No. 1 CA–CV 99–0417.

Court of Appeals of Arizona, Division 1, Department D.

July 13, 2000.

See also, 182 Ariz. 11, 893 P.2d 11.

Wilson, McConnell & Associates, P.C. by Beverly J. McConnell, Phoenix, for Petitioner–Appellee and Cross Appellant.

Law Offices of Hendrickson & Fuller by Richard T. Fuller, Mesa, for Respondent–Appellant, Cross Appellee.

## OPINION

LANKFORD, Presiding Judge.

¶ 1 This case concerns the calculation of child support arrearages owed by Charles Martin ("Father"). We address two issues. We first consider the proper basis for applying cost of living adjustments to compute further child support after entry of an arrearage judgment. Second, we decide whether partial payments made toward child support arrearages apply first to interest or to principal. For the reasons that follow, we affirm the judgment as modified.

¶ 2 This appeal stems from a 1981 divorce decree. Father agreed to pay child support payments to Christine Martin ("Mother") in the amount of $250.00 per week, with annual cost of living increases tracking the consumer price index ("CPI").

¶ 3 Father failed to meet his child support obligations and Mother subsequently brought enforcement proceedings. In 1990, the trial court calculated child support owed between April 13, 1981 and August 31, 1990, and entered judgment against Father in the amount of $84,220.32 ("the 1990 judgment"). The trial court also ordered Father to continue making child support payments of "$250.00 per week for a total of $1,086.25 per month." The court assigned $1,586.25 of Father's wages, allocating $1,086.25 to current child support and $500 toward the arrearage.

¶ 4 In a prior appeal, we reviewed that judgment. *See Martin v. Martin*, 182 Ariz. 11, 893 P.2d 11 (1994). The State had intervened on Mother's behalf in the trial court

after discovering that the arrearage judgment omitted the CPI adjustment. *See id.* at 14, 893 P.2d at 14. The State moved to set aside the award on the grounds of mistake under Rule 60(c)(1), Arizona Rules of Civil Procedure. *See id.* The trial court denied the motion as untimely and we affirmed. *See id.*

¶5 On January 1, 1992, Father's child support obligation was reduced by stipulation. Mother and Father agreed to a reduced child support obligation of $700.00 per month, with no CPI adjustment for subsequent years. On May 31, 1996, Father's child support obligation terminated when his youngest child reached age eighteen.

¶6 In 1998, Mother requested an updated and cumulative judgment of arrearage. The trial court calculated the arrearage for the period between April 13, 1981 and September 30, 1998, and entered judgment against Father in the amount of $135,418.46. Thereafter, Mother filed a motion for a new trial and to alter or amend the judgment, alleging error in the court's calculation. The trial court granted the motion and reentered judgment against Father in the amount of $195,042.65 ("the 1998 judgment").

¶7 Father timely appeals and Mother timely cross appeals. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) (1992) and 12–2101(B) (1994).

▮ ¶8 Father raises two arguments on appeal. He first argues that the trial court incorrectly calculated the amount of child support owed between September 1990 and December 1991. The trial court based its calculations on Father's 1981 monthly child support obligation and then applied the year-appropriate CPI factor. For the period between September 1990 through May 1991, the court calculated the monthly amount to

be $1,557.40, and, for the period between June 1991 and December 1991, the court calculated the monthly amount to be $1,630.53.

¶9 Father objects to the trial court's methodology because it results in Mother "recapturing" CPI adjustments that were not actually made between 1981 and 1990. The 1990 judgment, covering amounts owed between 1981 and 1990, had failed to include CPI adjustments. As a result, the amount owed in 1990 as shown in that judgment remained a constant of $1,086.25 per month. Father contends that the 1998 judgment should not have used a CPI factor adjusting the 1981 monthly obligation of $1,086.25. Instead, he argues that the CPI adjustment should start in 1990.[1]

¶10 Father's proposed methodology circumvents the original support order. The decree expressly entitles Mother to annual cost-of-living increases in child support.[2] The purpose of those increases is to make future child support payments equal in value to the amount of child support provided in 1981. To accomplish that purpose, the amount of child support due after the arrearage judgment *must* include CPI adjustments that were not made in the intervening years. To do otherwise would not merely allow the computation errors in the 1990 judgment to stand, but would dictate the amount of future child support payments. *Martin* disallows that result.[3] The trial court properly applied the CPI adjustment to render current child support equivalent to 1981 dollars.

¶11 However, the trial court overstated Father's child support arrearages. Mother candidly informed the trial court that the amount of $1,086.25 per month was not the same as $250.00 per week,[4] and that she had mistakenly relied on that assumption in her initial calculations submitted to the court.

---

1. Using Father's method of calculation, the CPI-adjusted amounts owed between September 1990 and May 1991 is $1,138.39 and between April 1991 and December 1991 is $1,144.91.

2. The decree provides:
   Child support shall be increased annually in an amount equal to the percentage increase in the Consumer Price Index during the preceding year.

3. In *Martin*, we recognized that the 1990 judgment contained errors and concluded that it did not modify Father's future child support obligations. 182 Ariz. at 16, 893 P.2d at 16.

4. $250 per week, multiplied by fifty-two weeks and divided by twelve months, equals $1,083.33 per month, not $1,086.25 per month.

**138**

Mother submitted a corrected calculation that based CPI adjustments on the amount of $250.00 per week. The trial court did not adopt Mother's recalculations. Therefore, the trial court's judgment of $195,042.65 must be modified to reflect the correct amount, $191,797.42.

¶ 12 We now address the second issue: Do Father's partial payments towards his arrearages apply first to principal or to interest? The trial court relied on Mother's calculations, applying Father's payments first to any current monthly child support owing, then to interest accrued on his child support arrearage, and lastly, to the arrearage principal itself. Father agrees that monthly child support obligations take first priority, but suggests a different formula for the calculation of his arrearage balance. He argues that his payments should apply first to the principal of his arrearage and thereafter to the interest accrued.

¶ 13 We must decide how to credit Father's partial payments of his arrearage. Section 25–510(C) (Supp.1999) suggests one answer.[5] After payment of current child support, the payment clearinghouse distributes money first to child support arrearage that has been reduced to judgment and thereafter to associated interest. *See* A.R.S. § 25–510(C). Both parties concede, however, that A.R.S. section 25–510(C) does not apply to this case because Father's payments were made prior to the effective date of the stat-

ute.[6] We therefore turn to the law in force prior to the adoption of this provision.

¶ 14 The payments should apply first to unpaid interest. In Arizona, each child support installment vests as a final judgment as it becomes due and is enforceable by law. *See Jarvis v. Jarvis,* 27 Ariz. App. 266, 267–68, 553 P.2d 1251, 1252–53 (1976); *see also* A.R.S. § 25–503 (Supp.1999) (codifying the common law rule). Under the generally prevailing "United States Rule," partial payments of a debt apply first to unpaid interest due and thereafter to the principal debt. *See* 47 C.J.S. *Interest & Usury* § 74 (1982); 45 Am.Jur.2d *Interest and Usury* § 75 (1999). That rule was established by the United States Supreme Court in *Story v. Livingston,* 38 U.S. (13 Pet.) 359, 371, 10 L.Ed. 200 (1839).[7]

¶ 15 We adopt the United States Rule. The purpose behind the rule is sound: allocating payments first to interest encourages debtors to pay the full balance due when both principal and interest are owing. *See Morley v. Morley,* 102 N.C.App. 713, 403 S.E.2d 574, 575 (1991). If payment were applied first to principal, then a creditor could be left with a non-interest bearing balance of accumulated interest and the debtor would have no incentive for speedy payment. By encouraging full payment, the rule ensures that the creditor is compensated for the loss of use of the principal.

---

**5.** This statute provides in relevant part:

Monies received by the support payment clearinghouse in cases not enforced by the state pursuant to title IV–D of the social security act shall be distributed in the following priority:

1. Current child support or current court ordered payments for the support of a family when combined with the child support obligation.

2. Current spousal maintenance.

3. The fee prescribed in § 12–284 to cover the cost of handling support or spousal maintenance payments.

4. Past due support reduced to judgment and then to associated interest.

5. Past due spousal maintenance reduced to judgment and then to associated interest.

6. Past due support not reduced to judgment and then to associated interest.

7. Past due spousal maintenance not reduced to judgment and then to associated interest.

**6.** This case does not present the issue, and we do not decide, whether section 25–510(C) applies to payments made after the statute's effective date.

**7.** In *Story v. Livingston,* the United States Supreme Court stated:

The correct rule in general is that the creditor shall calculate interest whenever a payment is made. To this interest the payment is first to be applied; and if it exceed the interest due, the balance is to be applied to diminish the principal. If the payment fall short of the interest, the balance of interest is not to be added to the principal so as to produce interest. This rule is equally applicable, whether the debt be one which expressly draws interest, or on which interest is given in the name of damages.

38 U.S. (13 Pet.) 359, 371, 10 L.Ed. 200 (1839).

¶ 16 The trial court followed the United States Rule. It adopted Mother's calculations, which had applied Father's payments first to interest accrued and then remaining payment, if any, to principal.

¶ 17 On cross-appeal, Mother requests reasonable attorneys' fees and costs in the trial court and on appeal, under A.R.S. section 12–341.01 (Supp.1999). The award of attorneys' fees pursuant to A.R.S. section 12–341.01 is limited to actions arising out of contract and actions that are groundless, not in good faith, and that constitute harassment. This action does not qualify for a fee award on either basis.

¶ 18 Accordingly, we affirm the judgment as modified and reduced to $191,797.42.

CONCURRING: CECIL B. PATTERSON, Jr., Judge, and SHELDON H. WEISBERG, Judge.