350 P.3d 826

**FLOOD CONTROL DISTRICT OF MARICOPA COUNTY, Plaintiff/Counterdefendant/Appellant,**

v.

**PALOMA INVESTMENT LIMITED PARTNERSHIP, a limited partnership; Prudential Insurance Company of America, a New Jersey corporation; Paloma Ranch Joint Venture, a joint venture; Hartford Fire Insurance Company; Gillespie Dam Investments, L.L.C., a limited liability company; Charter, L.L.C., a limited liability company, Defendants/Counterclaimants/Appellees.**

No. 1 CA–CV 13–0750.

Court of Appeals of Arizona, Division 1.

May 26, 2015.

As Amended on Denial of Reconsideration June 24, 2015.

Helm, Livesay & Worthington, Ltd. By John D. Helm, Roberta S. Livesay, Jeffrey L. Hrycko, Tempe, Counsel for Appellant.

Mesch, Clark & Rothschild, P.C. By J. Emery Barker, Scott H. Gan, Tucson, Co-counsel for Appellees.

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. By Stanley G. Feldman, Thomas G. Cotter, Tucson, Co-counsel for Appellees.

Judge JON W. THOMPSON delivered the opinion of the Court, in which Presiding Judge ANDREW W. GOULD and Judge MAURICE PORTLEY joined.

## OPINION

THOMPSON, Judge:

¶ 1 Flood Control District of Maricopa County (District) appeals from the revised second amended judgment entered on re-mand after this Court's decisions in *Flood Control District of Maricopa County v. Paloma Investment Ltd. Partnership*, 230 Ariz. 29, 279 P.3d 1191 (App.2012). The District contends that the interest rate on the amended judgment is contrary to law, and that the superior court erred in ordering partial payments on the amended judgment to be credited first to interest accrued and then to the remaining principal balance. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 This appeal arises from a 1993 flood of the Gila River and breach of the Gillespie Dam, which caused extensive downstream flood damage to land owned by farmers (the Farmers). Before the flood, the District was involved in a flood control project and had entered into an agreement with the owners of Gillespie Dam, Paloma Investment Limited, Prudential Insurance Company of America, and Paloma Ranch Joint Venture (Dam Owners), whereby the Dam Owners granted the District a flood control easement over 26.8 acres of the flood plain and river bed in exchange for the District's indemnification of the Dam Owners.

¶ 3 The Farmers filed a complaint for damages against the Dam Owners and the District. In 1997, the District filed a complaint for declaratory relief against the Dam Owners seeking a judgment declaring that the District had no obligation under the easement agreement to defend or indemnify the Dam Owners in any claim brought by the Farmers. The Dam Owners then filed a counterclaim against the District, alleging that the District's flood control project caused the Dam to fail, and seeking compensation from the District pursuant to the indemnity agreement.[1] The cases were later consolidated for trial, and then the consolidated cases were bifurcated into liability and damages phases.[2]

---

1. Gillespie Dam Investments, L.L.C., Paloma Water Users, Inc. and Charter, L.L.C. joined the counterclaim, seeking to recover damages for the District's alleged fault in the breach of the Dam. They were not beneficiaries of the indemnify agreement.

2. The jury found that although the District did not cause the Dam to fail, it was ten percent at fault for the Farmers' damages, and the Dam Owners were eighty percent at fault for negligently maintaining the Dam. *See A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 532 ¶ 44, 217 P.3d 1220, 1237

¶ 4 In 2007, after the jury's liability finding but before the award of damages, the Dam Owners and the Farmers settled their dispute in a *Damron/Morris* agreement. *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 741 P.2d 246 (1987); *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). The Dam Owners agreed to pay the Farmers $3.3 million, consented to a $14.75 million judgment, and agreed to either assign their indemnity claim against the District to the Farmers or allow the Farmers to join their indemnity action against the District. In exchange, the Farmers agreed not to execute on the judgment against the Dam Owners beyond the $3.3 million. The superior court determined that the settlement between the Farmers and the Dam Owners was reasonable, and on August 21, 2007, entered judgment consistent with the settlement, "with interest running at the legal rate of 10% per annum." [3]

¶ 5 After a hearing on the District's declaratory judgment action and the scope of the indemnity agreement, the superior court ruled that the indemnification clause in the easement imposed a duty on the District to indemnify the Dam Owners for the full amount of the stipulated judgment in favor of the Farmers, $14.75 million, and obligated the District to compensate the Dam Owners for all costs and fees they incurred during various actions pertaining to the flood. Thus, on November 18, 2009, the court entered an amended judgment awarding the Dam Owners $11.45 million for the unpaid portion of the stipulated judgment with the Farmers, and awarding the Dam Owners approximately $8.4 million in costs and fees incurred in defending the claims brought by Farmers. The Judgment further stated that: "All sums awarded in this judgment shall bear interest from the date hereof at the rate provided by law, except that interest shall accrue on the amount of [$11.45 million] ... at the rate provided by law from August 21, 2007, the date on which an order was entered on the issue of the reasonableness of that judgment in the companion case." Finally, the superior court awarded the District Rule 68 sanctions against certain Dam Owners (not parties to the indemnity agreement) who failed to recover against the District.

¶ 6 Both parties appealed, and on May 31, 2012, this court affirmed the superior court's ruling that the indemnity agreement between the District and the Dam Owners covered all of the Dam Owners' liability related to the breach in the Dam, including the entire amount stipulated to by the Dam Owners in the settlement agreement with the Farmers. *See Flood Control Dist. of Maricopa Cnty.*, 230 Ariz. at 36, ¶ 11, 279 P.3d at 1198. However, we reversed and remanded to the superior court for it to consider whether to allocate the Rule 68 sanctions in proportion to the offer of judgment that the District made to certain Dam Owners, and to determine the amount of prejudgment interest on the Farmers' settlement amount, accruing as of the date of the judgment approving the Farmers' settlement with the Dam Owners. *Id.* at 50–51, ¶ 91, 279 P.3d at 1212–13. The District's petition for review was denied by our Supreme Court on December 4, 2012.

¶ 7 On December 28, 2012, the District tendered payment via wire transfers in the following amounts: $14,059,111.54 to a trust account for the Farmers, as partial assignees of the Dam Owners; and $9,612,678.20 to a trust account for the Dam Owners. Approximately an hour after the wire transfer, counsel for the District sent an e-mail to the Dam Owners' and the Farmers' attorneys notifying them of the payments on the amended judgment. The District's e-mail explained that the wire transfer to the Farmers "represents payment of the principal amounts due to the Farmers as partial assignees of the Dam Owners per the 11/18/09 judgment, plus interest at 4.25% from 8/21/07 through 12/28/12." In addition, the e-mail said that the wire transfer to the Dam Owners' account "represents payment of the principal amounts due to [the Dam Owners] per the 11/18/09 judgment plus interest at 4.25%

(App.2009) (affirming judgment on allocation of fault).

**3.** This court affirmed the reasonableness of the settlement agreement in *A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 220 Ariz. 202, 208, ¶ 15, 204 P.3d 1051, 1057 (App. 2008), but left the scope of the indemnification agreement to be determined in the pending declaratory judgment action.

from 11/18/09 through 12/28/12." The e-mail concluded by stating:

> [p]ayment of interest has been made calculated on the statutory rate currently in effect of . . . 4.25. It is the intention of the District to "cut-off" as much accruing interest as possible by the making of these payments today and for the issues surrounding [Arizona Revised Statutes] A.R.S. [§ ] 44–1201 to be resolved by the parties or with the assistance of the courts in the future.

¶ 8 Counsel for the Farmers immediately responded to the District's e-mail, requesting confirmation that "the Farmers' [sic] may use the wired funds without risking any claim by [the District] that they have waived their right to pursue interest on the judgment at the 10% rate in effect at the time the judgment was entered." Counsel for the Dam Owners likewise sought confirmation that the Dam Owners "reserve their rights to dispute the sufficiency of the sums wired and that the use of these funds will not result in an accord and satisfaction claim by [the District]." In two follow-up e-mails and a letter dated January 17, 2013, the District's counsel clarified that although it is the District's position that "it has made payment in full of amounts owed by the District per the 2009 Amended Judgment," the payment "did not prevent further litigation of the interest rate issue" and was "intended to 'cut off' the further accrual of interest on the principal amounts due to the judgment creditors" while leaving the issue of the correct statutory rate of interest to be resolved in the future.

¶ 9 The Farmers and Dam Owners accepted the District's payments on the amended judgment and applied the payment first to the accrued interest, at a rate of ten percent per annum, with the remaining amount applied to the principal judgment. After crediting the payments in this fashion, a principal balance of $1,506,768.17 remained on the judgment in favor of the Farmers, and a

principal balance of $426,629.54 remained on the judgment in favor of the Dam Owners.

¶ 10 On January 8, 2013, this court issued its Mandate requiring the superior court to determine whether to apportion sanctions among the Dam Owners in proportion to the offers of judgment made by the District, and to determine the amount of prejudgment interest on the Farmers' settlement amount. At the hearing, the Dam Owners also moved to enforce their claim for the alleged unpaid portion of the amended judgment. After apportioning sanctions, the superior court found that "A.R.S. § 44–1201[ (B) ] controls and that the proper rate of interest to be accumulated on the Amended Judgment entered on November 18, 2009, continues to be interest at the rate of ten (10%) per cent per annum until paid in full." The superior court also found that the District's partial payment on the amended judgment should be "credited first to the accumulated interest and then to the principal balance of the amended judgment" pursuant to the "United States Rule." Accordingly, the superior court entered a second amended judgment in favor of the Dam Owners and the Farmers.

¶ 11 The District timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (Supp.2014).

## DISCUSSION

*Appeal is Not Moot*

¶ 12 The Dam Owners assert that the District's appeal is moot because the District paid the entire remaining amount of principal and interest due on September 3, 2013, which was after the superior court's June 20, 2013 minute entry ruling, but before that ruling was reduced to judgment on November 1, 2013. The Dam Owners contend that because the payment was made before the entry of the second amended judgment, the District's payment was not compulsory.[4] We disagree.

---

**4.** To the extent the Dam Owners assert that the payments of the amended judgment were voluntary, we are not obliged to adopt erroneous statements of the law and reject that characterization both as to mootness and payment allocation be-

tween principal and interest. *See infra,* ¶ 25; *see also Engel v. Landman,* 221 Ariz. 504, 510, ¶ 21, 212 P.3d 842, 848 (App.2009) ("We draw our own legal conclusions from [the] facts found or implied in the judgment.").

¶ 13 Payment of a judgment will preclude an appeal only when the payment is voluntary. *Del Rio Land, Inc. v. Haumont,* 110 Ariz. 7, 10, 514 P.2d 1003, 1006 (1973). Payments made "by way of compromise and settlement or under an agreement not to appeal or under circumstances leaving only a moot question for determination" are considered to be voluntarily made. *Id.* (quoting 2 A.C. Freeman, A Treatise on the Law of Judgments § 1165, at 2410 (5th ed.1925)); *see Webb v. Crane Co.,* 52 Ariz. 299, 320, 80 P.2d 698, 708 (1938) (stating that even though execution of judgment has not issued, payment of judgment "must be regarded as compulsory"); *see also Raimey v. Ditsworth,* 227 Ariz. 552, 559, ¶ 22, 261 P.3d 436, 443 (App.2011) (when judgment reversed, judgment debtor who has satisfied the judgment is entitled to restitution); Restatement (First) of Restitution § 74 (1937) (stating that a person who has conferred a benefit upon another in compliance with judgment is entitled to restitution if the judgment is reversed or set aside).

¶ 14 In this case, there was no compromise, settlement, nor an agreement not to appeal. Indeed, the District filed its reply in support of its motion for reconsideration of the superior court's minute entry eight days after it had tendered payment of the remaining amount due under the amended judgment. Furthermore, because the District's satisfaction of the judgment was to avoid the consequences of failing to comply with the court's order and the additional accrual of interest on the judgment, it cannot be said to have benefited from satisfying the judgment. Therefore, the District's appeal is not moot.

*Interest Rate on the Amended Judgment*

¶ 15 The District first argues that the interest on the amended judgment awarded by the trial court was contrary to law. Although the interest rate was ten percent at the time the amended judgment was entered on November 18, 2009, the District claims that the superior court should have reduced

the rate to 4.25 percent for the period after the judgment was entered based on an amendment to A.R.S. § 44–1201(B) (Supp. 2012).[5]

¶ 16 When parties have not agreed otherwise, a statute will control the interest rate applied to a judgment resolving their dispute. *McBride v. Superior Court,* 130 Ariz. 193, 194, 635 P.2d 178, 179 (1981) ("Interest upon a judgment is a statutory and not a contractual obligation."). Whether the interest rate set forth in A.R.S. § 44–1201(B) applies to a 2009 judgment presents a question of law we review de novo. *See Jenkins v. Hale,* 218 Ariz. 561, 563, ¶ 10, 190 P.3d 175, 177 (2008) (statutory interpretation is a legal question).

¶ 17 Normally, we regard a statute's plain language as the best indicator of its intended meaning, and we attempt to give effect to that meaning. *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.,* 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App.2008). If the language is subject to more than one interpretation, "we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *Hughes v. Jorgenson,* 203 Ariz. 71, 73, ¶ 11, 50 P.3d 821, 823 (2002), (quoting *UNUM Life Ins. Co. of Am. v. Craig,* 200 Ariz. 327, 330, ¶ 12, 26 P.3d 510, 513 (2001)).

¶ 18 Prior to the 2011 amendment, A.R.S. § 44–1201(A) (2003) stated: "Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to." As amended, A.R.S. § 44–1201(B) provides:

> Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment shall be at the lesser of ten per cent per annum or

---

5. This amendment was signed by the governor on April 13, 2011. *See* 2011 Ariz. Sess. Laws, ch. 99, § 17 (1st Reg.Sess.). An act containing no specific date takes effect on the ninety-first day after the Legislature adjourns the session in which it was enacted. *True v. Stewart,* 199 Ariz. 396, 397 n. 1, ¶ 3, 18 P.3d 707, 708 n. 1 (2001). In this case, the session adjourned on April 20, 2011, and accordingly the effective date was July 20, 2011. *See id.*

at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. [6] The judgment shall state the applicable interest rate and it shall not change after it is entered.

¶ 19 Section 44–1201(B) was amended by 2011 Ariz. Sess. Laws, ch. 99, § 17 (1st Reg.Session). Section 17 of that session law provides that:

> B. Section 44–1201, Arizona Revised Statutes, as amended by this act, applies to all loans that are entered into, all debts and obligations that are incurred and *all judgments that are entered on or after the effective date of this act.*

2011 Ariz. Sess. Laws, ch. 99, § 17 (1st Reg.Session) (emphasis added).

■ ¶ 20 The language of section 17 is a clear indication that A.R.S. § 44–1201(B) does not apply to judgments entered before the effective date of the amendment, July 20, 2011. Nonetheless, the District contends that because the plain language of A.R.S. § 44–1201(B) includes interest "on any judgment," this court is precluded from considering the enacted 2011 session law. We find this argument to be without merit. When the legislature specifies the statute's applicability or purpose in the session law that contains the statute, it is appropriate to interpret the statutory provisions in light of that enacted provision. *See Grand Canyon Trust v. Ariz. Corp. Comm'n*, 210 Ariz. 30, 40 n. 13, ¶¶ 43–44, 107 P.3d 356, 366 n. 13 (App.2005) (noting the "statement of legislative purpose is itself enacted and is thus subject to the entire review process by which a bill becomes law"); *see also Smith v.Super. Ct., Pima County*, 17 Ariz.App. 79, 82, 495 P.2d 519, 522 (1972) (citing legislative history as further support despite finding no ambiguity in the statute).

¶ 21 Because we conclude that the 2011 amendment to A.R.S. § 44–1201(B) is limited to judgments entered on or after its effective date, the District's reliance on *McBride v. Superior Court* is misplaced. In *McBride,* the petitioners obtained a personal injury judgment in January 1979 with a statutory interest rate of 6 percent. 130 Ariz. at 193, 635 P.2d at 178. The petitioners argued that a December 1979 amendment to A.R.S. § 44–1201(A), which increased the rate of interest on a judgment from 6 percent to 10 percent per annum, applied to their judgment. *Id.* at 193–94, 635 P.2d at 178–79. Our Supreme Court agreed, holding that "interest [on] a judgment is a statutory and not a contractual obligation, and when the interest rate [is] changed by statute, the rate of interest on [a] judgment [is] also changed." *Id.* at 194, 635 P.2d at 179. Thus, the Court found that the petitioners were entitled to 6 percent interest from the date of the judgment until the effective date of the amendment, and 10 percent interest thereafter. *Id.*

¶ 22 However, the 1979 amendment to A.R.S. § 44–1201 did not contain the applicability language included in the enactment of the 2011 amendment. 1980 Ariz. Sess. Laws, ch. 2, § 4 (2nd Spec.Session). Moreover, the legislature further clarified the statute's applicability by adding the following sentence in the 2011 amendment: "The judgment shall state the applicable interest rate and it shall not change after it is entered." Based on the plain language of the statute and this history, it is obvious that the legislature intended to limit the applicability of the reduced interest rate set forth in A.R.S. § 44–1201(B) to judgments that were entered on or after July 20, 2011, and to further limit any future statutory interest rate changes from affecting those judgments entered during the time that the current statute remained in effect. Consequently, the superior court did not err in applying an interest rate of ten percent per annum on the amended judgment from November 18, 2009 until satisfaction of the judgment.

*Application of Payments to Principal or Interest*

■ ¶ 23 The District next argues the superior court erred in ordering that the De-

---

**6.** Under the amended statute, the post-judgment rate was 4.25 percent, based on the prime rate of 3.25 percent on July 2011. *See* Board of Governors of the Federal Reserve System, http://www.federalreserve.gov/releases/h15/20110725/ (last visited January 30, 2015).

cember 28, 2012 partial payment be credited first to interest accrued, and then to the remaining principal balance. The District asserts that because it informed the Dam Owners and Farmers that the wire transfer represented payment of the principal amount due, plus interest at 4.25 percent per annum, Arizona law required the court to order that the payment be applied first to the principal balance. We review de novo the superior court's legal conclusions, as well as its findings regarding mixed questions of law and fact. *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcontinental Ins. Co.*, 218 Ariz. 13, 19, ¶ 19, 178 P.3d 485, 491 (App.2008).

¶ 24 Arizona courts have long held that a debtor who makes a payment has a right to direct how the payment shall be applied, and that if no instruction was given, the creditor has the right to make the application as he or she sees fit. *See Cameron v. Sisson*, 74 Ariz. 226, 246 P.2d 189 (1952); *Valley Nat'l Bank of Phoenix v. Shumway*, 63 Ariz. 490, 163 P.2d 676 (1945); *Chudzinski v. Chudzinski*, 26 Ariz.App. 130, 546 P.2d 1139 (1976); *Braden Machinery Co. v. Valley Nat'l Bank of Arizona*, 19 Ariz.App. 447, 508 P.2d 112 (1973); *Webb*, 52 Ariz. at 311–12, 80 P.2d at 704. However, this court has also recognized that "the above-cited common law rule relates only to application of payments that have been voluntarily made by the debtor; *it has no application where the payment has been involuntarily made*, such as through execution or judicial sale." *Nestle Ice Cream Co. v. Fuller*, 186 Ariz. 521, 523, 924 P.2d 1040, 1042 (App.1996) (emphasis added) (citing 60 Am.Jur.2d Payment § 103 (1987)); *see also O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir.1964) (holding that the court could not require the I.R.S. to credit the involuntary payment for tax liabilities in the manner instructed by the debtor); *In re Bulk Sale of Inventory*, 6 Kan.App.2d 579, 631 P.2d 258, 262 (1981) (noting that although the debtor's act of turning over assets for bulk sale was voluntary, the payment of

tax lien from proceeds was involuntary and thus, subject to the application as designated by the creditor).

¶ 25 Here, the District's December 2012 partial payment on the amended judgment was clearly involuntary. *See Nestle Ice Cream Co.*, 186 Ariz. at 523, 924 P.2d at 1042; *see also Del Rio Land*, 110 Ariz. at 10, 514 P.2d at 1006 (absent compromise, settlement, or an agreement not to appeal, payment of judgment is involuntary); *Freeman v. Wintroath Pumps–Div. of Worthington Corp.*, 13 Ariz.App. 182, 184, 475 P.2d 274, 276 (1970) ("Even though execution was not issued, the payment of a judgment must be regarded as compulsory."). Thus, the question before us is how the District's involuntary payments should be applied to the principal on the amended judgment and to the interest accrued. This court faced a similar issue in *Martin v. Martin*, 198 Ariz. 135, 138, ¶¶ 14–15, 7 P.3d 144, 147 (App.2000). In *Martin*, the father argued that his child support payments should apply first to the principal of his arrearage and thereafter to the interest accrued. *Id.* at 138, ¶ 12, 7 P.3d at 147. In rejecting the father's argument, this court first noted that in Arizona, each child support installment vests as a final judgment as it becomes due and is enforceable by law. *Id.* at ¶ 14 (*citing Jarvis v. Jarvis*, 27 Ariz.App. 266, 267–68, 553 P.2d 1251, 1252–53 (1976)). We then adopted the "United States Rule" for partial payments on such final judgments. *Id.* at ¶ 15; *see Story v. Livingston*, 38 U.S. (13 Pet.) 359, 10 L.Ed. 200 (1839) (establishing the "United States Rule").[7] Under the "United States Rule," absent an agreement or statute to the contrary, partial payments of a debt are to be applied "first to unpaid interest due and thereafter to the principal debt." *Id.* at ¶ 14; *see also* 44B Am.Jur.2d Interest and Usury § 72 (1999).

¶ 26 We agree with *Martin* that the purpose behind the "United States Rule" is sound:

> principal, pursuant to the "United States Rule." 198 Ariz. at 138, ¶ 13, 7 P.3d at 147. The 1998 statutory change in family support cases does not affect the general rule set forth in *Martin* applying the "United States Rule" to final judgment payments. *See* A.R.S. § 25–510(A)(4) (Supp. 2014).

---

**7.** We reject the District's logical fallacy that the applicability of the "United States Rule" in Arizona is limited to pre-December 1998 child support arrearage payments. *Martin* held that absent an agreement or statute to the contrary, payments on final judgments are to be applied first to interest due, and second to the remaining

[A]llocating payments first to interest encourages debtors to pay the full balance due when both principal and interest are owing. . . . If payment were applied first to principal, then a creditor could be left with a non-interest bearing balance of accumulated interest and the debtor would have no incentive for speedy payment. By encouraging full payment, the rule ensures that the creditor is compensated for the loss of use of the principal.

*Id.* at ¶ 15; *see also Alley v. Stevens*, 209 Ariz. 426, 428, ¶ 10, 104 P.3d 157, 159 (App. 2004) (following "United States Rule" to apply father's child support payments to interest arrearage first and principal arrearage second). Although a contrary result may be dictated by agreement of the parties, no such agreement existed here.[8] Accordingly, the superior court correctly applied this rule by crediting payments first to the accrued interest on the amended judgment, and then to the remaining principal.

### CONCLUSION

¶ 27 For the foregoing reasons, we affirm the superior court's second amended judgment. The Dam Owners request an award of attorneys' fees pursuant to A.R.S. § 12–349 (Supp.2014). We deny that request. The Dam Owners also request attorneys' fees pursuant to A.R.S. §§ 12–348 (Supp.2014), and –341.01 (Supp.2014), which request we grant upon their compliance with ARCAP 21.

---

8. The District asserts for the first time in its reply brief that it "takes the position that the correspondence between the parties ... demonstrates an agreement to pay principal and interest up to 4.25%." Because the District failed to raise this issue in the trial court and opening brief, it is deemed untimely and waived. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18, 169 P.3d 120, 125 (App.2007); *Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App.1990).